THE ILLINOIS WATCH CASE COMPANY

*v.*

ISAAC N. PEARSON, Secretary of State, *et al.*

*Filed at Springfield March 26, 1892.*

1. CORPORATION—*change of name—adopting name similar to existing corporation.* An existing corporation may, by a vote of its stockhold-ers, at a meeting duly called, change its name; but the new name as-sumed or adopted must not be the same, or similar to, or be liable to be mistaken for, the name of any other corporation of the State, without the consent of such other corporation.

2. A corporation in changing its name can not adopt the name of another without its consent, even though the latter is not fully organ-ized, and is therefore incapable of consenting. After the corporation is licensed it must be regarded as a corporation, whose corporate name is protected against its use by others.

3. SAME—*who may effect change of name—Secretary of State refusing certificate of change.* The steps necessary to the change of the corporate name are to be taken by the corporation itself, and its officers and stockholders. The State or Secretary of State has nothing to do in the matter to accomplish such change, unless the Secretary of State has the right to refuse to receive the certificate of the vote of the stockholders, or refuse to allow it to be filed in his office, when he knows that the new name is the same as that of some other corporation already existing or in process of organization.

4. SAME—*whose duty to see that a corporation does not adopt the name of another corporation.* Where an existing corporation undertakes to change its name, the stockholders must see that the new name adopted is not similar to or likely to be mistaken for the name of some other corporation of the State; but where a new corporation is formed the Secretary of State is required to see that the license is not issued to a corporation having the same name as that of another.

5. Since the stockholders of a corporation are prohibited from adopting a new name similar to that of any other corporation, it follows that they should take steps to ascertain whether any other company in the State has the name they propose to take, or a name similar thereto. Such fact can be learned by inquiry at the office of the Secretary of State.

6. In the formation or organization of new corporations the Secre-tary of State is prohibited, by section 2 of the act of April 18, 1872, from

issuing any license to two companies of the same name. The several statutes on this subject are intended to prevent, if possible, two or more corporations doing business under our laws from making use of the same name.

7. SAME—*notice of change of name.* The notices required by section 2 of the act of March 26, 1872, of a stockholders' meeting for the purpose of voting on the change of a corporate name, are intended only for the stockholders, and not the general public. The notice of the change which is required to be given to the public is the final notice provided for in section 5, hence the notice of the meeting of the stockholders is no notice to the proposers of a new corporation of the new name proposed to be adopted.

8. SAME—*power of Secretary of State to revoke license to organize.* The law confers no power on the Secretary of State to revoke the license to organize a corporation, except for failure to complete organization within two years. That officer can not revoke the license because some other corporation has taken the first steps under the statute to change its name to that adopted by the new corporation.

9. STATUTES—*passed at same session construed together.* Although two statutes passed at the same session of the legislature may take effect at different dates, yet so far as they, or any of their provisions, relate to the same subject matter, they may be properly construed together to ascertain the legislative intent.

10. MANDAMUS—*granting petition in part.* Where a petition for a writ of *mandamus* asks the court to compel the performance of two different acts, it may be issued for a part of the relief sought and denied in part.

11. SAME—*not granted in useless or doubtful cases.* The writ of *mandamus* will not be granted as a matter of absolute right, and when it can be seen that it can not accomplish any good purpose, or that it will fail to have a beneficial effect, the writ will be denied. It is never granted in doubtful cases, nor unless the party calling for it has a clear right.

This is a petition for a *mandamus*, filed in this court. The material facts appear in the opinion.

Messrs. GRIFFIN & WILE, for the petitioner.

Messrs. W. H. & J. H. MOORE & PURCELL, for the respondents.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This is a petition for *mandamus*, filed in this court on January 19, 1891, by the "Illinois Watch Case Company" against the Secretary of State, alleging, in substance, that, while it was engaged in taking such steps for the change of its name to the "Elgin Watch Case Company" as are required by the statutes of this State, certain persons, towit: John M. Cutter, J. H. Moore and J. A. McCormick, made and filed with the Secretary of State a statement, under the corporation Act of this State, for the purpose of forming a corporation by the name of the "Elgin Watch Case Company," and obtained a license to them as commissioners to open books for subscription to the capital stock of the "Elgin Watch Case Company;" and that the petitioner, having done all that was required by law to change its name and adopt the name of the "Elgin Watch Case Company," is injured and wronged by the efforts made by said persons, and others subscribing for said stock, to organize a corporation under the same name. The prayer of the petition is, that the Secretary of State be commanded to file in his office the certificate, theretofore presented to him, of the vote of the stockholders of the petitioner in favor of such change of name, and also that the Secretary of State be required to revoke the license so issued to open books of subscription to the capital stock of a corporation to be called the "Elgin Watch Case Company." The Secretary of State filed his answer to the petition, and afterwards, upon motion and by stipulation, the said Cutter, Moore and McCormick, and Walter L. Thompson, Albert J. Perry and Will J. Vincent were made defendants to the proceeding, all of whom, except the said Moore, were subscribers to the stock of the proposed new corporation. The new defendants thus brought in have filed a general demurrer to the petition.

The question presented is, whether the petitioner has the better right to the use of the name, "Elgin Watch Case Com-

pany," by reason of the steps taken by it to change its name, or whether the defendants, who are the proposers of the new corporation and subscribers to its capital stock, have the better right to the use of said name, by reason of the license issued, and of the proceedings had under the license. Such of the facts set up in the pleadings, as are material in the consideration of the question thus presented, will be recited. The steps taken by the petitioner to effect the change of its name were in accordance with the requirements of the Act of March 26, 1872, providing for changing the names of incorporated companies, and of the Act of June 14, 1887, amending section 1 thereof, and of the Act of June 6, 1889, amending sections 1, 3, 4 and 7 thereof. (1 Starr & Cur. page 624; Laws of 1887, page 132; Laws of 1889, page 95).

On January 18, 1890, the directors of the "Illinois Watch Case Company" passed a resolution, expressing a desire to change the name to the "Elgin Watch Case Company," calling a special meeting of the stockholders for February 24, 1890, and providing for the giving of notices of such meeting to the stockholders in person, or by mail, and by publication. On January 20, 1890, notices were mailed to all the stockholders of the meeting to be held on February 24, 1890, to vote upon the question of the change of the name. General notice of such meeting and its object was published for three successive weeks in a Chicago newspaper, towit: on January 21 and 28 and February 4, 1890; on February 24, 1890, a meeting of all the stockholders was held at the company's place of business in Chicago pursuant to the notice, and a resolution that the name be changed as above was adopted, all the stockholders voting for it in the mode required by the statute. The statutory certificate of the vote, verified by the affidavit of the president and under the Seal of the corporation, was filed in the recorder's office of Cook County. On May 24, 1890, a like certificate was presented to the Secretary of State at his office in Springfield, with a tender of the legal fee for filing the

same, and a demand was then and there made upon him that he file the same, but he refused to receive and file said certificate. It is alleged in the petition, that petitioner has been prevented from making the further publication, required by section 5 of said Act of 1872, by reason of such refusal of the Secretary of State.

On January 30, 1890, said Cutter, Moore and McCormick filed with the Secretary of State the statement above mentioned, in accordance with section 2 of the Act of April 18, 1872, concerning corporations, for the purpose of forming a corporation for pecuniary profit under the name of the "Elgin Watch Case Company," with a capital stock of $10,000.00, and having its principal office in Chicago; and thereupon, on the same day, the Secretary of State issued the license above mentioned to open books of subscription to the capital stock of said company. The Secretary alleges in his answer, that, when he issued the license, no notice had been filed in his office of the proposed change of name of the petitioner, and that he had no notice of such proposed change, until he received a letter dated May 7, 1890, from one of petitioner's attorneys, enclosing a certificate of the vote of the stockholders of the petitioner in favor of such change; and that he "then refused to permit the petitioner to file said certificate * * * , solely because the name had been appropriated by other persons for another company."

The petition alleges, that no organization of any corporation under said license had been completed, when the stockholders of the petitioner adopted a resolution for the change of name on February 24, 1890, and that, when petitioner demanded of the Secretary, that he file the certificate of the vote upon said resolution, it also demanded of him, that he revoke the license so issued by him to open books of subscription, both of which demands were refused. Accordingly, on June 7, 1890, the petitioner served upon the Secretary a written notice, that it had taken all the preliminary steps

required by law to change its name, and that it claimed the exclusive right to the name of the "Elgin Watch Case Company;" and in which notice the Secretary was notified not to issue to any other persons, or "concern," any final certificate of the organization of any other incorporation by that name. On September 10, 1890, Cutter and McCormick offered to file in the Secretary's office their report, as commissioners acting under said license, showing that the stock had been fully subscribed for, and that, after the giving of the ten days' notice required by law, a meeting of the subscribers had been held on September 5, 1890, and certain persons had been elected as directors. The petition alleges, that the Secretary refused to file said report, or to issue a final certificate of organization; in his answer, however, he alleges that the commissioners filed their report, but that, being in doubt as to the rights of the parties, he has delayed the issuance of the final certificate, and he "submits that he had no authority to revoke the license * * * and had no authority to file the certificate of change of name of petitioner as demanded, or to issue any certificate of such change."

The petition alleges, that the petitioner, the "Illinois Watch Case Company," was organized under the laws of Illinois on November 27, 1888; that its principal office was located in Chicago; that its manufacture of watches was carried on in Chicago until May 20, 1890, when its factory was removed to Elgin, in Kane County, in pursuance of plans which were matured in January, 1890. The petition also alleges, that all the defendants, who demur to the petition, "had actual knowledge that your petitioner had taken each of the steps and had done each of the acts hereinbefore set out for changing the corporate name," "long before, at the time of and since their alleged subscription," and at the time of the offer to file said report of the commissioners. It would appear, that the subscriptions to the stock had not been completed until about ten days before September 5, 1890. The petition

does not state, at what time before such subscription the said defendants had, or acquired, their knowledge of petitioner's acts for the change of its name. The petition contains no averment, and, therefore, the demurrer thereto does not admit, that the defendants had any notice or knowledge on January 30, 1890, when they applied for and obtained the license aforesaid, of any of the steps theretofore taken by petitioner, for the change of its name.

Section 1 of the act of March 26, 1872, after providing that, whenever the board of directors of any corporation existing under the laws of this State may desire to change the name, they may call a special meeting of the stockholders to vote upon the question of such change of name, contains the following proviso : "provided that, in changing the name of any corporation under the provisions hereof, no name shall be assumed or adopted by any corporation similar to, or liable to be mistaken for, the name of any other corporation organized under the laws of this State, without the consent of such other corporation." Section 2 of the Act of April 18, 1872, after providing that persons proposing to form a corporation shall make, acknowledge and file with the Secretary of State a statement "setting forth the name of the proposed corporation" and the other matters therein specified, closes as follows : "The Secretary of State shall thereupon issue to such persons a license as commissioners to open books for subscription to the capital stock of said corporation at such times and places as they may determine ; but no license shall be issued to two companies of the same name." (1 Starr & Cur. 610.) Although the first of the above named Acts went into force on the day of its passage, and the second not until July 1, 1872, yet they were both passed at the same session of the Legislature, and, so far as any of their provisions relate to the same subject matter, they may be construed together. Thus construed, they plainly indicate, that the intention of the legislature was to prevent, if possible, any two or more corporations, doing

business under the laws of this State, from making use of the same name.

The steps, required to be taken to secure a change of name, must be taken by the corporation itself. Proceedings for the change are to be begun when the directors desire it; the directors call the special meeting of the stockholders to vote upon the change and give the notices of such meeting; the stockholders by their votes adopt or reject the proposed change; the certificate of the vote must be verified by the affidavit of the president, and must be under the seal of the corporation, and must be filed by the corporation in the offices of the Secretary of State and of the recorder of the county where the principal business office is located; "upon the filing of such certificate, the change proposed and voted for at such meeting as to name, etc. * * * shall be and is hereby declared accomplished;" the corporation, upon filing such certificate, shall cause a notice of such change to be published for three successive weeks. There is nothing, necessary to be done to change the name of the corporation, which cannot be done without the aid or co-operation of the State, or of any of its officials, unless the Secretary of State has the right to refuse to receive the certificate of the vote of the stockholders, or to refuse to permit it to be filed in his office, when he knows that the new name is the name of a corporation already existing, or in process of organization.

On the other hand, the proceedings necessary for the formation of the corporation cannot be carried on, or completed, without the aid of the State, acting through its Secretary. The Secretary of State must issue the license and the final certificate of complete organization.

When there is a change of name, the stockholders must see to it, that the new name adopted by them is not similar to, or liable to be mistaken for, the name of any other corporation organized under the laws of the State. When a new corporation is formed, the Secretary of State must see to it, that

a license is not issued to two corporations having the same name. The duty of avoiding the use of the same name by two corporations is imposed by both of the foregoing Acts.

The principal act in effecting a change of name is the vote of the stockholders in adopting the new name. If they are forbidden to adopt a name similar to that of any other corporation organized under the laws of the State, it must follow, that they should take steps to ascertain, whether any other corporation in the State bears the name, which they propose to take, or a name similar thereto. The prohibition against the adoption of a name already in use involves and implies the duty of ascertaining whether such name is already in use. Such fact can be learned by inquiry at the office of the Secretary of State. The records of the recorder's office of a particular county may show the names of corporations whose principal office is in that county, but the records of the office of the Secretary of State will show the names of the corporations organized under the general State law, whether their principal office be in one county or another.

If, when the stockholders of petitioner met on February 24, 1890, to vote to change the name, they had applied to the Secretary of State for information, they would have learned, that, theretofore, towit: on January 30, 1890, application had been made to form a new corporation having the name of "Elgin Watch Case Company." Not only is it true, that the petition in this case does not charge the proposers of the new corporation with having notice on January 30 of the resolution adopted by petitioner's directors on January 18, or with having knowledge of the notices given by the directors for the meeting of February 24, but it is also true, that the notices, which section 2 of the Act of March 26, 1872, requires to be delivered, or mailed, and the general notice which that section requires to be published, were intended as notices to the stockholders of the meeting; and that such published notice was not intended to be a notice to the general public of

a desire to change the name. The notice of the change, which is required to be given to the public, is the notice provided for in section 5, to be published after the filing of the certificate of the vote. Up to January 30, petitioner had done nothing to effect the change in its name, except that the directors passed a resolution on the 18th to call a meeting of the stockholders for February 24, and mailed notices of such meeting to the stockholders on January 20, and published notice thereof on January 21 and January 28. We do not think, that the adoption of such resolution, and the giving of such notices, gave the petitioner an exclusive right to the use of the proposed name.

As the law forbids the adoption of a name similar to that of "any other corporation *organized* under the laws of this State without *the consent* of such other corporation," it is said that the new corporation of the defendants cannot be embraced within the meaning of the law, because it had not been fully organized, when petitioner completed the steps necessary to change its name, but merely had a license at that time to open books of subscription; and that, therefore, its consent to the use of the name could not be obtained. The name of another corporation cannot be adopted without the consent of the latter, and it can make no difference whether the failure to obtain that consent arises from a refusal to give it, or from the inability to give it.

It is true, that a strict construction of the statute would limit its language to "organized" corporations. But we think the phraseology should be construed to include corporations, so far advanced in the process of organization as to have secured the issuance of a license. When the proposers of the corporation have obtained a license, they have called into exercise the power of the State, which alone can give being to a corporation. Under the license, subscriptions to the stock may be taken, directors may be elected, and two years are allowed for organizing and proceeding to business. The law

nowhere confers upon the Secretary of State the power to revoke the license, except for failure to organize and proceed to business within two years from the date of such license. During the two years, the license is authority for taking the steps authorized by the law, and cannot be revoked. The sole ground, upon which it is claimed that the Secretary should be required to revoke the license in the present case, is that, before its issuance, the directors of petitioner desired to change petitioner's name, and had notified its stockholders to meet and vote upon the question of such change. The ground alleged is wholly insufficient. We are, therefore, of the opinion, that a *mandamus* directing a revocation of the license, should not be granted.

It has been held, that a writ of *mandamus* may be issued for a part of the relief asked. (*People* v. *Secretary of State*, 58 Ill. 90 ; *People* v. *Lippincott*, 72 id. 578). The petition here is not only for a revocation of the license, but to compel the Secretary of State to receive and file in his office the certificate of the vote by petitioner's stockholders to change its name, as provided for in section 4 of the Act of March 26, 1872. Upon this branch of the case we have had more difficulty in reaching a conclusion. If said section 4 be considered by itself, it would seem that the filing of the certificate of change of name was a mere ministerial act, and that the Secretary of State had no discretion in the matter of allowing it to be filed. But we are inclined to the view, that section 4 should be construed in connection with section 2 of the Corporation Act. By the latter, the Secretary of State is clothed with the discretionary power of refusing a license to two corporations of the same name. If, after he had granted a license for the formation of a corporation by a certain name, he should suffer an existing corporation to file a certificate showing its adoption of that same name, he would thereby be consenting to the existence of two corporations in the State of the same name. This would be a violation of the spirit if not the letter of the Stat-

28—140 ILL.

utes. As, in the present case, the license to form the "Elgin Watch Case Company" was irrevocable, the only way to give effect to the intention of the legislature, that two corporations by the name of the "Elgin Watch Case Company" should not be allowed to do business in the State, would be to refuse to allow petitioner's certificate of change of name to be filed.

But whether the Secretary had or had not the discretion to refuse to permit the certificate of change to be filed, the fact remains that he did so refuse, and the question before us is, whether we shall grant a writ of *mandamus* to compel him to permit it to be filed. The exercise of the power to grant the writ "rests, to a considerable extent in the sound discretion of the court, subject always to the well settled principles which have been established by the courts, or fixed by legislative enactment." (High's Ex. Leg. Rem. sec. 9). "Its issue is discretionary with the court, acting upon existing facts, and viewing the whole case with due regard to the consequences of its action." *(The People* v. *Ketchum et al.* 72 Ill. 212). The writ is not granted as a matter of absolute right, and where it can be seen, that it cannot accomplish any good purpose, or that it will fail to have a beneficial effect, it will be denied. *(Cristman* v. *Peck,* 90 Ill. 150 ; *The People* v. *Lieb,* 85 id. 484.)

The consequence of granting the writ here will be, that two corporations of the same name will be doing business in the State, and a conflict of interests, and litigation in a different form from that now pending, may result hereafter. The writ is never granted in doubtful cases, nor unless the party asking it has a clear right. (High's Ex. Leg. Rem. sec. 9). Such doubt exists in the case at bar, and the petitioner has not a clear right to the relief asked, by reason of its failure to apply to the Secretary of State for information, or to notify him in any way before January 30, 1890, of its intention to change its name.

For the reasons here stated, the writ is denied.

*Writ denied.*