## The People of the State of Illinois ex rel. Road District No. Five, of Pulaski County, Illinois, et al., Appellees, v. Cache River Drainage District et al., Appellants.

1. DRAINAGE—*when plea in mandamus to compel construction of bridge not demurrable.* In mandamus against a river drainage district to compel the erection of a permanent bridge, it was error to sustain a general demurrer to a plea showing, among other allegations, that the district had already erected four bridges which were all destroyed by slides, and that to compel the district to erect another bridge at the point in question would be fruitless and nugatory, although the petition set up a clear right to relief.

2. MANDAMUS—*when writ not granted.* The writ of mandamus is not granted as a matter of right although a clear legal right is established, where it can be seen that a good purpose cannot be accomplished or that it will fail to have a beneficial effect.

3. DRAINAGE—*when plea setting up destruction of bridges by slides defective.* A plea in mandamus to compel a river drainage district to erect a permanent bridge, setting up that a number of bridges had been erected at or near the point in question but were destroyed by slides, was defective in failing to allege that such bridges had been properly constructed.

4. MANDAMUS—*when plea insufficient.* A plea in mandamus to compel a drainage district to erect a permanent bridge, which was general and was in form the general issue as in actions *ex delicto* was demurrable.

5. DRAINAGE—*when plea alleging construction of bridge to be impracticable demurrable.* A plea in mandamus to compel a drainage district to erect a bridge, alleging that it was not practicable to maintain a permanent bridge at the point in question where the highway crossed the ditch, because of the character of the soil, was demurrable.

6. DRAINAGE—*when plea demurrable in mandamus to compel construction of bridge.* A plea in mandamus to compel a drainage district to erect a bridge, denying that work in accordance with the plans and specifications adopted was of great and lasting benefit to all territory contained in the district and resulted in reclaiming a large portion of the land, and that the lands in the district sustained benefits in excess of the cost of such improvements, was demurrable.

7. DRAINAGE—*when plea demurrable in mandamus to compel*

*construction of bridge.* A plea in mandamus to compel a drainage district to erect a bridge, which denied that since the construction of the ditch in question the children residing in the school district west of the ditch have been unable to attend school, and that the residents residing east have been unable to get to a stated place west of the ditch, was demurrable.

8. DRAINAGE—*when plea insufficient in mandamus to compel construction of bridge.* A plea in mandamus against a drainage district to compel the erection of a bridge, which denied that numerous requests and demands had been made upon defendants to construct a permanent bridge across the line of the public highway, was insufficient.

9. DRAINAGE—*what is not good plea of estoppel in mandamus to compel construction of bridge.* A plea in mandamus against a drainage district to compel the erection of a bridge, claiming that because the public used bridges which had been constructed south of the line of the highway in question, petitioners were estopped from insisting that a bridge be maintained at the point where the ditch in question crossed the highway, was not well taken as a plea of estoppel.

10. DRAINAGE—*when plea of want of money insufficient in mandamus to compel construction of bridge.* Allegations in a plea in mandamus against a drainage district to compel the erection of a bridge, that defendants had no money belonging to the district with which to construct a bridge at the point in question and that the district had no authority to levy an assessment for the necessary money, and that more assessments had already been levied than the court found the improvement would be, and that an assessment to build such bridge would be greater than the benefits, did not constitute a good plea.

Appeal from the Circuit Court of Pulaski county; the Hon. D. T. HARTWELL, Judge, presiding. Heard in this court at the October term, 1920. Reversed and remanded. Opinion filed March 30, 1921.

COURTNEY, HELM & HELM, for appellants.

C. S. MILLER, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Road District Number Five (5) and twelve residents and taxpayers of Pulaski county, appellees, filed a petition for a writ of mandamus against Cache River

526 APPELLATE COURTS OF ILLINOIS.

The People v. Cache River Drainage Dist., 221 Ill. App. 524.

Drainage District and its three commissioners, appellants, to compel them to construct a good and sufficient permanent bridge over a certain drainage ditch of said district where said ditch intercepts a certain public highway, or to close said ditch.

The petition sets out the organization of the district and the adoption of plans and specifications of the proposed work and alleges that a part of the work proposed and adopted was the construction of a large drain at what was known as "Post Creek Cut-Off"; that such ditch or drain was designed to intercept the water of Cache river and convey same into the Ohio river; that it was necessary to cut such ditch across a certain described public highway; that it was originally designed that the ditch where it crossed the highway should be 114 feet wide at the top, 30 feet wide at the bottom and 42 feet deep; that the public highway in question had been in existence for more than 40 years, leading from the Village of Olmsted in Pulaski county to the City of Metropolis in Massac county; that it is one of the principal highways in Pulaski county and is one of the routes originally adopted as a State Aid Road, and, prior to the grievances complained of, was one of the most important and generally traveled highways in Pulaski county; that in accordance with said plans said ditch was constructed across the highway in the summer and fall of 1912; that through the natural erosion of the waters, and on account of the caving of its banks and other natural causes, said ditch is now, at the point where it intercepts the highway, 45 feet deep and 285 feet wide at the top; that since the construction of said ditch it has been impossible for the general public to use the highway at this point, as the ditch cannot be crossed and the drainage district has not constructed a sufficient bridge along the line of said highway and has maintained no bridge there for the use of the public; that a public school is located on said highway

just east of the ditch; that since the construction of the ditch, the school children residing west of the ditch have been unable for a portion of the time to attend school, and, when attending, have been obliged to make a detour of some distance in order to cross the ditch; that the citizens and property owners residing east of the ditch have been unable since the construction of the ditch to get to the Village of Grand Chain west of the ditch, where they get their mail and do their trading, without making a detour of several miles; that numerous demands have been made upon the commissioners of the district to construct a permanent bridge across the ditch along the line of the highway, but "they have failed, neglected and refused to construct said bridge, or to furnish the general public any means whereby they could travel said highway at the point aforesaid across said ditch"; that it became and was the duty of the commissioners at the time said ditch was excavated across said public highway "to properly construct on said highway and across said ditch a permanent bridge or other structure so that the citizens of said neighborhood and the general public could travel along and upon said highway without hindrance or without any obstruction caused by said ditch, but this the said commissioners have wholly failed to do, and continue to fail, refuse and neglect to do as is required of them by law."

The prayer of the petition is that the commissioners "immediately either close said ditch or construct across said ditch and along the line of said public highway at a point where said ditch intercepts said public highway in section two (2) township fifteen (15) south, range two (2) east of the third principal meridian in Pulaski county, a good and sufficient permanent bridge, of sufficient capacity and strength to carry the general traffic along said public highway, and that they maintain said bridge in such condition until further order of this court, and in case the said district

528    APPELLATE COURTS OF ILLINOIS.

The People v. Cache River Drainage Dist., 221 Ill. App. 524.

has not sufficient funds on hand with which to do said work that they may be compelled by the order of this court to levy an assessment upon the lands and lots within said Drainage District, for the purpose of raising sufficient funds with which to construct said bridge and comply with the order of this court.'' To the petition appellants interposed ten pleas, to all of which the trial court sustained a general demurrer. Appellants elected to abide their pleas and thereupon the court awarded a writ of mandamus ordering them to construct and maintain a good, sufficient and permanent bridge at the point where the highway in question is intersected by the ditch.

Appellants assign as error the trial court's action in sustaining the general demurrer to each of their pleas. Since the judgment must be reversed if any one of the pleas is held to state a defense to the petition, and since appellants in their argument invite particular attention to the sixth plea, which, in our opinion, is the best and most complete plea, we will first consider it. This plea denies the charge that appellants have made no effort to maintain or construct a permanent bridge at the point where said ditch intersects said highway and alleges that it is not true that they have wholly failed to construct on said highway and across said ditch a permanent bridge so that the public could travel along said highway without hindrance or obstruction caused by said ditch as alleged in said petition. It further alleges that the highway in question is located upon a sandy ridge which runs for several miles east and west parallel with the Ohio river and about one-half mile distant from the low-water mark of that river; that the underlying strata of the soil of said ridge is composed of quicksand and slippery potter's clay and other very slippery, erosive combinations of soils; that said ditch was excavated across said highway on December 22, 1912, and on December 23, 1912, appellants commenced

the construction of a bridge across said ditch where it intersects with said highway; that the work of constructing said bridge was prosecuted diligently and without delay; that said bridge was completed and turned over to the public for use on February 27, 1913, and said highway, in connection with said bridge, was thereafter continuously used by the public in the same manner it was used before the excavation of said ditch until July 27, 1913, when, because of its slippery character, the soil under the support of said bridge caved in, and carried the bridge with it to the bottom of the ditch and thereby the bridge was destroyed; that on July 28, 1913, work was begun on the construction of another bridge at the same point, which was completed November 20, 1913, but on April 23, 1914, was destroyed in the same manner as the first bridge; that immediately after the destruction of the second bridge, appellants hoping to avoid the slippery character of the soil, selected a site 600 feet south of where the first two bridges were constructed and on March 4, 1914, commenced the construction of a third bridge at the point selected; that this bridge was completed on July 11, 1914, and was thereupon turned over to the public and thereafter said highway was used by the public in the same manner and to the same extent as before the excavation of the ditch until March 6, 1915, when this bridge was likewise destroyed by a slide in the soil; that after the destruction of the third bridge appellants, after thorough investigation and under the advice of competent bridge builders, selected another site 800 feet south of where the ditch intersects the highway, where it was considered the soil was less liable to erosion and slides; that on March 10, 1915, work was commenced on a fourth bridge at the site selected, and was completed on January 10, 1916, and was immediately turned over to the public for use, and said highway in connection with said bridge was continuously used by the public in the same manner and

530	Appellate Courts of Illinois.

The People v. Cache River Drainage Dist., 221, Ill. App. 524.

to the same extent as before the excavation of the ditch until March 4, 1917, when it was destroyed by another slide; that although this fourth bridge had been destroyed by a slide in the soil, yet its location was considered by appellants and competent bridge builders to be the only appropriate place for the construction of a bridge across the ditch, as the soil at that place seemed less likely to slide than at any other place that could be found after diligent investigation; that on March 15, 1917, appellants started a large force of men in the construction of a fifth bridge at this point; that this fifth bridge was designed by competent bridge builders so that it can be extended at each end after completion and thereby meet and accommodate itself by such extension to any reasonable slides that may occur; that a large force of workmen was engaged in the construction of this bridge and same was very nearly completed when this suit was instituted, but said work was continued without delay and was completed on July 21, 1917, and was immediately turned over to the public for use, and since that date said highway has been continuously used, to the present time, in connection with said bridge in the same manner and to the same extent as before the excavation of said ditch; that before the erection of any of the bridges south of where said ditch intersects said highway, appellants purchased a 40 foot right of way and constructed a good roadbed thereon on each side of the ditch, extending from the highway to the bridge, so that the short detour thus made is the only inconvenience the public has sustained and that such inconvenience was unavoidable; that each of said bridges was constructed under the supervision of competent bridge builders; that each of them was properly constructed in accordance with the most approved plans in the construction of such bridges and was built in the most substantial manner and out of first-class material; that appellants had expended $25,500 in the

construction of said bridges; that said ditch, at the point where it intersects said highway, since the destruction of the two bridges erected at that point, had widened 200 feet because of the slipping of the soil on the banks, and after each freshet continues to widen, and is now 400 feet wide from bank to bank; that it is wholly impracticable to construct a permanent bridge at that point with any reasonable expenditure, and that appellants have not been guilty of any dereliction of duty in this behalf.

It is the duty of drainage commissioners under the law, as claimed by appellees, to construct and maintain bridges at points on highways over drainage ditches, and it must be conceded that the facts set forth in the petition, if true as therein stated, show a clear right to a writ of mandamus. Yet the courts of this State have not always granted the writ, even though the petitioner has established a clear legal right for which mandamus is the proper remedy. "The writ is not granted as a matter of absolute right, and where it can be seen that it cannot accomplish any good purpose, or that it will fail to have a beneficial effect, it will be denied." (*Illinois Watch Case Co. v. Pearson,* 140 Ill. 423.) Our Supreme Court in *People v. City of Streator,* 258 Ill. 273, said: "The rule has long been recognized in this court that the writ of mandamus will not be issued in any case where it will prove unavailing, fruitless or nugatory; that the court will not compel the doing of a vain and useless thing." In the case of *Kenneally v. City of Chicago,* 220 Ill. 485, it was stated: " 'Courts, in granting or refusing writs of mandamus, exercise judicial discretion and are governed by what seems necessary and proper to be done in the particular instance for the attainment of justice. Courts, in the exercise of wise, judicial discretion, may, in view of the consequences attendant upon the issuing of a writ of mandamus, refuse the writ, though the petitioner has a clear legal right for

which mandamus is an appropriate remedy.' It has been said that 'the writ is not granted as a matter of absolute right, and where it can be seen that it cannot accomplish any good purpose, or that it will fail to have a beneficial effect, it will be denied.' "·

The facts set forth in the sixth plea, if true, and they must be accepted as true for the purpose of this demurrer, clearly show that appellants have in good faith made every reasonable effort to perform their duty in the erection of a bridge at the point where the drainage ditch intersects the highway. They further show that to compel appellants to erect another bridge at that point cannot accomplish any good substantial purpose nor will it have a beneficial effect, but on the contrary such an order would prove unavailing, fruitless and nugatory, and under the conditions detailed in that plea would direct "the doing of a vain and useless thing." Therefore, under the authorities above cited, the facts as set forth in the sixth plea established a good defense to the case made out by the petition and it was error for the court to sustain a demurrer to that plea.

Many of the reasons urged by counsel for appellees in favor of the judgment of the court below depend upon facts which would be proper matters of proof on a trial, but which do not appear at all from the pleadings. The second plea is substantially the same as the sixth, except it does not contain the allegation that the bridges were properly constructed of first-class material. It does, however, contain certain allegations from which it may well be inferred that the bridges were properly constructed, and therefore we would hesitate to hold that the second plea was obnoxious to demurrer, though we are of the opinion it would be better pleading for it to contain this express allegation. The first plea is general and is in form the general issue as in actions *ex delicto*. The third alleges that it is not practicable to maintain a per-

manent bridge at the point where the highway crosses the drainage ditch, because of the character of the soil. The seventh plea denies that work in accordance with the plans and specifications adopted was of great and lasting benefit to all territory contained in the district and resulted in reclaiming a large portion of the land, and that the lands in the district sustained benefits in excess of the costs of such improvements. The eighth denies that since the construction of the ditch the children residing in the school district west of the ditch have been unable to attend school, and that the residents residing east of the ditch have been unable to get to the Village of Grand Chain west of the ditch. The ninth denies that numerous requests and demands have been made upon appellants to construct a permanent bridge across the line of said public highway. These pleas are clearly insufficient and the court did not err in sustaining the demurrer to them. The fourth, fifth and tenth pleas contain substantially the same allegations of fact as the second and sixth pleas, but are subject to the same objection as that above pointed out to the second plea. The fourth and tenth pleas contain the further allegation that by reason of the fact that the public used the bridges constructed south of the line of the highway, the petitioners are estopped from insisting that a bridge shall be maintained at the point where the ditch crosses the highway. In our opinion this plea of estoppel is not well taken. The fifth plea contains the further allegation that appellants have no money belonging to the district with which to construct a bridge at the point in question, and that the district has no authority to levy an assessment against the property in the district for the money necessary to construct such bridge; that more assessments have already been levied than the court found the cost of the improvements would be and that an assessment to build such bridge would be greater than the benefits received by the property

in the district. These allegations do not constitute a good defense to the petition but if this plea had contained the allegation that the bridges erected were properly constructed of first-class material, we would hold it good as against a general demurrer.

The judgment must be reversed because it was manifest error to sustain the demurrer to the sixth plea, and as the case must be remanded for further proceedings we have deemed it best to briefly state our views concerning the other pleas.

*Reversed and remanded.*