THE PEOPLE *ex rel.* Lockwood & Strickland Company *et al.* Appellants, *vs.* THE GRAND TRUNK WESTERN RAILWAY COMPANY *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. The decision in the case of *Weage v. Chicago and Western Indiana Railroad Co.* 227 Ill. 421, is conclusive of the contentions made in this case relating to the right of the city to vacate, narrow or obstruct the streets, in the matter of requiring elevation of railroad tracks, and with reference to the ordinance being uncertain and ambiguous in its terms.

2. MUNICIPAL CORPORATIONS—*extent to which location of subway may be left to city officials.* Where a track elevation ordinance provides for the construction of a sub-way in a certain street which does not require the full width of the street, the matter of locating the foundations and walls may be delegated to the proper city officials in charge of the work.

3. SAME—*presumption in favor of validity of ordinances.* Ordinances, to be valid, must be reasonable, but the presumption is in favor of their validity, and the question of their reasonableness and necessity is committed, in the first instance, to the municipal authorities.

4. SAME—*courts will not interfere with a city's plan for track elevation because another plan might be better.* The adoption of plans for track elevation and the making of sub-ways for securing and protecting the rights of the public is committed to the judgment and discretion of the city council, and unless the city has acted in bad faith and not for the best interests of the public, courts will not interfere because some other plan may be thought by experienced engineers to be a better one.

5. INJUNCTION—*what does not justify enjoining track eleva-tion.* Failure upon the part of a certain railroad company to pro-cure a designated strip of land and dedicate it to the city for use as a street, as provided in an ordinance requiring the elevation of tracks by several railroad companies, does not render the entire or-dinance void nor justify enjoining the track elevation proceedings.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE A. CARPENTER, Judge, presiding.

This is a bill filed in the circuit court of Cook county by the People of the State of Illinois, by John J. Healy, State's attorney of that county, on the relation of the appellants, against the city of Chicago, the Grand Trunk Western Rail-way Company, the Chicago Junction Railway Company, and others, seeking to have certain ordinances of said city providing for the elevation of tracks of the appellee com-panies declared void, so far as they purport to give the appellee companies authority to permanently obstruct Hal-sted, Wallace and Forty-ninth streets and Union avenue at the points where the rights of way of the appellee companies cross or intersect said streets in the city of Chicago. The bill also asks that appellees be enjoined from erecting abut-ments or walls of sub-ways within the lines of Halsted and Wallace streets and Union avenue where said streets are crossed by the rights of way of said railroad companies in said Forty-ninth street, and from erecting walls or embank-ments in the last named street.

Appellants allege that the Grand Trunk Western Rail-way Company, purporting to act under and by authority of said ordinances, shortly prior to the filing of the bill began the elevation of its road-bed across Halsted and Wallace streets and Union avenue, and in so doing had commenced the construction of cement abutments seven feet within the easterly and westerly lines of Halsted street and three feet within the easterly and westerly lines of Union avenue, and in such manner as to narrow Wallace street from sixty-six to twenty-one feet; that said Halsted street is eighty feet

in width at this point and for many years had been a public thoroughfare within said city; that Union avenue and Wallace street had been public thoroughfares to the width of sixty-six feet; that the ordinances, in so far as they permit the narrowing of Halsted street from eighty feet to sixty-six feet, were a mutual mistake of the engineers of the city of Chicago preparing the ordinances for the city and the appellee railroad companies, they supposing said street to be sixty-six feet in width instead of eighty feet at the point in question; that no necessity existed for the narrowing of Halsted street, as the full width of eighty feet could be bridged in as successful and practical a manner as the sixty-six feet; that said street is occupied there by two lines of street car tracks and is one of the main thoroughfares of said city, being used by a large and growing business district adjacent thereto; that it is required, at its full width of eighty feet, for the traffic during the rush hours of the day, and that the narrowing undertaken by the railroad companies will make the use of said street under the subway dangerous to the public and insufficient for the traffic now passing; that the construction of the sub-ways in Union avenue has already been begun, and if completed will permanently narrow said street from sixty-six to sixty feet, and that the construction of a sub-way in Wallace street has also been begun, and if completed will narrow said street from sixty-six feet to twenty-one feet.

It is alleged that the location of said sub-ways is ambiguous and uncertain. The provisions in said ordinances referring to the location of these sub-ways are substantially as follows:

The first ordinance was passed October 23, 1899, and provided (par. 5, sec. 4): "Sub-ways shall be constructed beneath the tracks of the Chicago and Grand Trunk Railway Company, where said tracks are intersected and crossed by Wallace street, Union street and South Halsted street." Section 4*a*: "The sub-ways and grade crossings......

shall, as to their size and dimensions, locations, etc., be: ......Sub-way in Wallace street, under the Chicago and Grand Trunk railway and the Union Stock Yards and Transit Company's railroad. (Street twenty-one feet wide) ......Width between walls of sub-way, twenty-one feet; width of roadway, seventeen feet in sub-way......Sub-way in Union street, under the Chicago and Grand Trunk railway and the Union Stock Yards and Transit Company's railroad. (Street sixty-six feet wide)........Width between walls of sub-way, sixty-six feet; width of roadway, forty-six feet in sub-way......Sub-way in South Halsted street, under the Chicago and Grand Trunk railway and the Union Stock Yards and Transit Company's railroad. (Street sixty-six feet wide)......Width between walls of sub-way, sixty-six feet; width of roadway, forty-six feet in sub-way."

In 1902 the city council passed another ordinance as to the elevation of the railway tracks of the appellee companies and other railroads, referring specifically to the ordinance of October 23, 1899, it being clear that the ordinance last passed was intended to supplement, enlarge and in part modify the original ordinance. The ordinance last passed provided that the sub-ways in question, as to size, dimensions and location, should be: "Sub-way in Wallace street, under the Grand Trunk Western railway and the Chicago Junction railway. (Street twenty-one feet wide)......Width of walls of sub-way, twenty-one feet; width of roadway, seventeen feet in sub-way......Sub-way in Union avenue, under the Grand Trunk Western railway and the Chicago Junction railway. (Avenue sixty-six feet wide)........ Width between the walls of sub-way, sixty feet; width of roadway, forty feet in sub-way......Sub-way in South Halsted street, under the Grand Trunk Western railway and the Chicago Junction railway. (Street sixty-six feet wide)......Width between walls of sub-way, sixty-six feet; width of roadway, forty-six feet in sub-way."

The bill, as amended, was demurred to by all of the appellees and on hearing the demurrer was sustained. Appellants electing to stand by their amended bill, it was dismissed at their cost for want of equity. An appeal was thereupon prayed to this court.

PARKER & HAGAN, (CHARLES V. CLARK, of counsel,) for appellants.

WILLIAM D. BARGE, and GEORGE W. MILLER, (EDWARD J. BRUNDAGE, Corporation Counsel, of counsel,) for appellee the City of Chicago.

G. W. KRETZINGER, and J. J. ROONEY, (WINSTON, PAYNE, STRAWN & SHAW, and GLENNON, CARY, WALKER & HOWE, of counsel,) for other appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The claim is made that the ordinances in question operate to vacate a part of the streets and that they are uncertain and ambiguous in terms. The first ordinance, it is conceded, is the same one that was considered and passed upon by this court in *Weage* v. *Chicago and Western Indiana Railroad Co.* 227 Ill. 421. What was said in that case effectually disposes of all questions as to the right of the city council to vacate, obstruct or narrow the streets in question. While the precise question raised here as to the uncertainty of that ordinance was not passed upon in that case, manifestly the decision substantially disposes of that question also. A comparison of that ordinance with the other two under discussion here shows that the terms of the later ones are fully as certain and unambiguous as was the ordinance passed upon in the *Weage case, supra.*

Appellants in their bill state that the said ordinances are invalid in so far as they permit said companies, or either of them, to narrow the said Halsted, Wallace and Forty-ninth

streets and Union avenue. Pleadings are always taken most strongly against the pleader, and here is a plain statement in their bill that the ordinances permit the narrowing of the streets. The uncertainty of an ordinance as to the location of a railroad right of way in *Chicago and Western Indiana Railroad Co.* v. *Dunbar,* 100 Ill. 110, was far greater than in the present instance. It was there insisted that the ordinance was void because it did not designate with certainty the line upon which the road was to be constructed, omitting to specify the exact point at which it should cross the several streets to be intersected by it. This court there stated that the statute nowhere, expressly or by any reasonable implication, requires such precise certainty. "The law leaves to the discretion of the city council the question as to the cases in which the power shall be exercised and the question as to what provision shall be made upon the subject in each case. Over this discretion the courts have no control." And it was there held that the ordinance was not void for uncertainty.

We cannot agree with the contention of appellants that the parts of the ordinance quoted in the statement of the case as to the location and width of the sub-way are not clear and certain. In this connection it is contended that the ordinances do not state in what part of the roadway in Halsted street the walls of the sub-way shall be constructed, and that it cannot be said upon which side of the street the excess between the sixty-six foot sub-way and the eighty feet claimed as the full width of the street is to be left; that the city council must provide distinctly at what point in the street these sub-ways are to be placed; that the power to locate them cannot be delegated by the city council to any of the city authorities. This court in *Arms* v. *Ayer,* 192 Ill. 601, quoted with approval from Sutherland on Statutory Construction (p. 611): "The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an

authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." In *People* v. *Reynolds,* 5 Gilm. 1, this court stated (p. 13) : "Necessarily, regarding many things, especially affecting local or individual interests, the legislature may act either mediately or immediately. We see, then, that while the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive and yet imbecile." The right to delegate power by municipal authorities springs from the same reasons and is controlled in the same way as the delegation of the legislative power by the State. (Cooley's Const. Lim.—7th ed.—p. 294.) Applying this doctrine to the ordinances in question, it is plain that the power as to locating the foundations and walls of the subway, as provided in said ordinances, may be properly delegated by the city council to the city officials.

Appellants further contend that from the allegations of the bill, taken in connection with the provisions of the ordinances, it must be presumed that a mutual mistake was made in designating the sub-way in Halsted street as only sixty-six feet in width, when, as a matter of fact, the width of the street is eighty feet. The allegations of the bill set out that a sub-way could be made occupying the entire width of the street as readily, from a practical standpoint, as one only sixty-six feet in width, and that to narrow the street by a sub-way of only sixty-six feet will make the street dangerous to the public and insufficient for the traffic.

Municipal ordinances, to be valid, must be reasonable. The presumption, however, is in favor of their validity. The determination of the question as to whether an ordinance is reasonable and necessary is committed, in the first instance, to the municipal authorities. "When they have

acted and passed an ordinance it is presumptively valid, and before a court would be justified in holding their action invalid, the unreasonableness or want of necessity of such a measure for the public safety and for the protection of life and property should be clearly made to appear. It should be manifest that the discretion imposed in the municipal authorities has been abused by the exercise of the power conferred, by acting in an arbitrary manner." (*Chicago and Alton Railroad Co.* v. *City of Carlinville,* 200 Ill. 314; *Chicago and Alton Railway Co.* v. *Averill,* 224 id. 516.) "Whether a statute is constitutional or not is always a question of power,—that is, a question whether the legislature in the particular case, in respect to the subject matter of the act, the manner in which its object is to be accomplished and the mode of enacting it, has kept within the constitutional limits and observed the constitutional conditions. In any case in which this question is answered in the affirmative the courts are not at liberty to inquire into the proper exercise of the power. They must assume that legislative discretion has been properly exercised." (Cooley's Const. Lim.—7th ed.—p. 257; *United States* v. *DesMoines Navigation and Railway Co.* 142 U. S. 510; *Angle* v. *St. P., M. & O. R. R. Co.* 151 id. 1.) The judicial department of government will not inquire into the motives of the legislative department in the enactment of laws; and this rule applies also to ordinances and other legislative acts of municipal corporations, with, perhaps, the qualification that municipal ordinances may be impeached for fraud, at the instance of persons injured thereby. *People* v. *Cregier,* 138 Ill. 401.

In determining the mode of accomplishing the elevation of railroad tracks in the city of Chicago, this court, in *Summerfield* v. *City of Chicago,* 197 Ill. 270, held (p. 287): "The proper discharge of that duty involved the exercise of the judgment and discretion of the members of the council. The general rule is, that where legislative or discretionary powers are conferred upon municipal corporations the

courts will not interfere, unless, in the exercise of such discretion, there is fraud, manifest oppression or gross abuse." To the same effect are *Brush* v. *City of Carbondale,* 78 Ill. 74; *Illinois Central Railroad Co.* v. *City of Chicago,* 141 id. 586; *City of Mt. Carmel* v. *Shaw,* 155 id. 37; *Canal Comrs.* v. *Village of East Peoria,* 179 id. 214; *Village of Winnetka* v. *Chicago and Milwaukee Electric Railway Co.* 204 id. 297.

The adoption of any plan for the elevation of tracks and the making of sub-ways in the streets thereunder, and securing, protecting and preserving the rights to the public, is committed to the judgment and discretion of the city council. (*Summerfield* v. *City of Chicago, supra.*) Unless the city council has been shown to have acted in bad faith and not for the best interests of the public, the courts will not declare such action unauthorized because another plan might, in the judgment of engineers of experience, be thought to be a better one. (*City of Belleville* v. *Herzler,* 225 Ill. 404.) Whether the sub-way in Halsted street should be sixty-six feet or eighty feet is a question into which so many different elements enter for decision, that almost necessarily, under the conditions surrounding the elevation of tracks at that point, different engineers might have differing views. The question of the best plan must necessarily be left to someone to decide, and under the law that decision is left to the municipal authorities and not to the courts. Admitting that Halsted street at this point is eighty feet in width, the proof on this record does not show that in making the sub-way only sixty-six feet the public authorities acted unreasonably or arbitrarily. The courts will not restrain or control the action of municipal authorities because they are merely unwise or erroneous. 20 Am. & Eng. Ency. of Law, (2d ed.) p. 1230, and authorities there cited.

Even admitting a mistake was made, as alleged in the bill, no authorities have been cited to the effect that a court

of equity would have a right to interfere and reform an ordinance or declare it invalid on the ground of mutual mistake. The authorities cited by appellants on this point all refer to mutual mistakes between private individuals or between corporations and individuals, and not, as in this case, to a municipal ordinance which has been passed and is being carried out. The fallacy of much of the argument of appellants rests upon the theory that the basis of these ordinances is the granting of rights in public property to the appellee corporations. Manifestly, from the record before us, these ordinances were not passed at the solicitation of the railroad companies but in the interests of the public, at the initiation of the municipal authorities. In discussing this question we held in the *Weage case, supra,* (p. 425):
"The basis of this power and the necessity for its exercise is the protection of human life and the promotion of the public convenience and welfare. It does not rest upon and cannot be exercised solely for the benefit of the railroad company. * * * The elevation was ordered by the city council, not for the benefit of the railroad company, but for the public protection, welfare and benefit."

It is further contended that the ordinances do not grant to the Grand Trunk Western Railway Company the right to construct a sub-way in Union avenue only sixty feet in width. It appears from the allegations in the bill that the Grand Trunk Western Railway Company is the successor of the Chicago and Grand Trunk Railway Company, and it is claimed that the first ordinance required the latter named company to construct a sub-way in Union avenue sixty-six feet in width, and that the second ordinance, which provided that the sub-way in Union avenue should only be sixty feet in width, did not apply to the Grand Trunk Western Railway Company, as said last mentioned ordinance required the elevation of tracks, as to said last named company, to begin west of Halsted street, and that Union avenue is east of Halsted street. While there may be some indefiniteness

on this point in the first part of the second ordinance, it is very clear, from reading this entire ordinance, that it was intended that the sub-way in Union avenue should be constructed sixty feet in width, and it is also clear that the second ordinance was intended in this respect to be a modification of the first.

One of the ordinances provided that the Grand Trunk Western Railway Company should dedicate, for the use of the city of Chicago, as a public street, certain property described in said ordinance, and the bill alleges that said company has not so procured and dedicated said property, and that therefore said appellee company should be restrained from proceeding with the work until that is done. No authority is cited in support of this contention. Said ordinance provides that it must be accepted by the appellee companies before it is enforceable against them. There is nothing set up in the bill to show that the parties to the ordinance have not, by waiver or other arrangement, satisfactorily adjusted this question; and even if there has been no waiver or other arrangement made by the city, the failure to so convey would not render the entire ordinance void or justify a court of equity in restraining proceedings thereunder. We said in *Brush* v. *City of Carbondale, supra,* (p. 77): "The remedy by injunction should not be extended in its operation to cases not falling within well recognized principles. The tendency seems to be to greatly abuse it, as a remedy, * * * in a great variety of cases where its use is prohibited by well recognized principles, and * * * rather for the obstruction than the advancement of justice."

To grant the relief prayed for in the bill would be contrary to well recognized principles of equity jurisprudence and tend rather to obstruct than to advance justice. The decree of the circuit court dismissing the bill for want of equity must therefore be affirmed.    *Decree affirmed.*