(No. 11264.—Judgment affirmed.)
THE PEOPLE *ex rel.* Jacob L. Jacobs, Appellee, *vs.* PERCI-
VAL B. COFFIN *et al.* Appellants.

*Opinion filed February 20, 1918—Motion to file petition denied.*

1. OFFICES—*city cannot create an office except by ordinance, as
provided by section 2 of article 6 of the Cities and Villages act.*
Neither the city of Chicago nor any other city bound by the pro-
visions of section 2 of article 6 of the Cities and Villages act can
create an office except by an ordinance passed in accordance with
the provisions of said section.

2. SAME—*what must be shown in a petition for mandamus to
compel restoration to an office.* One seeking by *mandamus* to com-
pel restoration to an office must show in his petition that the office
legally exists, where it is created by ordinance, and that he has a
legal right to it; and the ordinance should be properly pleaded, as
the burden is on him to show a right to the office as a *de jure* officer.

3. SAME—*difference between an officer and an employee.* Gen-
erally, an officer takes an oath of office while a mere agent or em-
ployee does not, and the duties of a mere employee are purely
ministerial, as he is not clothed with discretion nor with power to
represent or bind the corporation.

4. SAME—*what is an office.* An office is a place in a govern-
mental system created or recognized by the law of the State which
either directly or by delegated authority assigns to the incumbent
thereof continuous performance of certain permanent public duties.

5. SAME—*difference between a position, an office and an em-
ployment.* A position is analogous to an office in that the duties
that pertain to it are permanent and fixed, but it differs from an
office in that its duties may be non-governmental and not assigned
to it by any public law of the State, while an employment differs
from both an office and a position in that its duties, which are non-
governmental, are neither certain nor permanent.

6. MUNICIPAL CORPORATIONS—*an employment or a position un-
der a municipal corporation need not be by an ordinance.* An em-
ployment by a municipal corporation, or a position which is in the
nature of a permanent employment, may, in the absence of statu-
tory or charter provisions, be created without the requirement of
a formal ordinance, by-law or resolution.

7. SAME—*civil service commissioners of city, and officers under
them, are a branch of municipal government.* Civil service commis-
sioners of a city, as provided in the Civil Service act, are a branch

of the municipal government, and, being city officers, the officers or employees under them are the officers or employees of the city, and can only be discharged in the same manner as any other officers or employees of the city under the Civil Service law.

8. SAME—*power to create offices of a city belongs to the city.* The power to create positions under the civil service commissioners is not vested in the commission itself by any provision of the statute, but the power to create offices, positions and employments of a city belongs to the city itself.

9. SAME—*civil service employee of city cannot be discharged except as provided by section 12 of Civil Service act.* The Civil Service act relating to cities is necessarily a part of the contract of employment of every civil service employee, and such an employee can only be discharged in the manner provided by section 12 of said act.

10. SAME—*when a position cannot be temporarily abolished.* While a city operating under the Civil Service law may in good faith discontinue any position or employment which has become unnecessary, neither the city nor the civil service commission may temporarily abolish a position in order to oust the person employed and re-establish it later with another person as employee.

11. MANDAMUS—*mandamus will not be denied simply because petition asks court to compel performance of two different acts.* In the absence of a special demurrer, where the petition is otherwise sufficient, the Supreme Court will not deny the writ of *mandamus* simply because the petition asks the court to compel the performance of two different acts, but in such case it may be issued for a part of the relief sought and denied as to a part, or the whole of the relief may be granted in the absence of a specific objection or defense that only a part of the relief should be granted.

12. SAME—*salary of a position created by appropriation ordinance must be paid from the appropriation.* Where a relator is re-instated to a position created by an appropriation ordinance after the appropriation has lapsed, the judgment of the court directing that the relator be paid from the time he was wrongfully discharged until his re-instatement must be construed as entitling him to his salary only up to the time for which the appropriation was made for compensation unless there has been a subsequent appropriation.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (ROY S. GASKILL, of counsel,) for appellants.

FRANCIS X. BUSCH, and ELMER M. LIESSMANN, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Jacob L. Jacobs filed in the circuit court of Cook county a petition for a writ of *mandamus* commanding Percival B. Coffin, Edward C. Racey and Joseph P. Geary, as civil service commissioners of the city of Chicago, to forthwith restore him to his position of expert on system and organization, salary $291.66⅔ per month, and to permit him to discharge the duties thereof, and commanding Charles H. Sergel, as city treasurer of the city of Chicago, and Eugene R. Pike, as city comptroller of the city of Chicago, to forthwith pay or cause to be paid to him the salary appropriated by the city council for the said position at said rate from May 8, 1915, up to and including the date of his restoration to said position. Pending the hearing of the cause Edward C. Racey died, and Charles E. Frazier, his successor in office, was substituted as one of the respondents. A general demurrer was filed to the petition by the respondents and was overruled by the court. Respondents elected to stand by their demurrer, and judgment was entered awarding the writ as prayed, from which respondents appealed to the Appellate Court for the First District, where the judgment of the circuit court was affirmed. The cause comes to this court on a certificate of importance and an appeal granted December 15, 1916.

The petition alleged that petitioner was a resident of the city of Chicago, the adoption of the Civil Service law by the city of Chicago and the appointment of civil service commissioners in pursuance thereof; that on January 2, 1912, the city council of Chicago passed an ordinance appropriating the sum of $6000 for two positions or places

of employment, to be known as "Expert on System and Organization," at a salary of $3000 a year for each of said positions, the material portions of the ordinance being set out in the petition *in hæc verba;* that similar ordinances in substantially the same language were passed January 2, 1913, January 9, 1914, and January 16, 1915, except that the ordinances enacted in the years 1914 and 1915 fixed the salaries of the two positions, one at $3500 a year and the other at $3000 a year; that on May 14, 1912, in pursuance of section 3 of the Civil Service law, the civil service commissioners of Chicago classified said position as an office or place of employment in the classified civil service in the city of Chicago; that on May 24, 1912, the appellants, the civil service commissioners, gave notice of the time and place and general scope of a promotional examination to be held for the said position and of the duties and nature and pay of said position; that appellee, who was at the time in the office or position of examiner of efficiency, grade 3, engineering service, was examined and upon his markings stood second on the promotional eligible list; that on July 15, 1912, in compliance with the Civil Service law, appellee was appointed to said position to fill a vacancy that had occurred and accepted the appointment and entered upon the duties of said position and continued therein until May 8, 1915; that on that date there was unexpended in said appropriation for said position the sum of $2333.33; that said position is not one of those exempted from the operation of the Civil Service law by the terms of section 11 of said law, and that appellee performed the duties of said position honestly and efficiently during the time that he was occupying the same. It is further alleged in the petition that on May 7, 1915, appellee was suspended from duty in said position, the suspension to take effect May 8, 1915, and that he was so notified in writing by said civil service commissioners; that during the period of thirty days following said notice there was no investigation of the con-

duct and actions of appellee by the civil service commissioners or anyone on their behalf; that on June 8, 1915, appellee reported at the office of the civil service commissioners and asked to be allowed to perform the duties of said position, and was informed by them that the following orders had been entered by them in their record of date June 5, 1915, to-wit:

"Whereas, the commission did on May 5, 1915, enter an order suspending Jacob L. Jacobs, expert on system and organization, salary $291.66⅔ per month, pending investigation; and whereas, the period of suspension of the said Jacob L. Jacobs expired by operation of law on June 7, 1915:

"It is therefore ordered that Jacob L. Jacobs be restored to duty. And it is further ordered that he be laid off as of June 8, 1915, on account of lack of funds. And it is further ordered that his name be returned to the eligible register from whence it came, and that no salary be allowed the said Jacob L. Jacobs during the thirty-day period of suspension, nor during any period of time his name remains upon the eligible register awaiting re-instatement. And it is further ordered that the position of expert on system and organization, salary $291.66⅔ per month, be and the same is hereby abolished."

Appellee further alleges that his suspension by the commissioners was not in good faith and was not for the purpose of investigating his conduct and actions, but was a pretext and attempt to deprive him of his position in order that the commissioners might fill the same with some other person, contrary to the terms and provisions of the Civil Service law; that on June 5, 1915, there was no lack of funds with which to pay the salary of said position, but, on the contrary, there was of the appropriation made therefor the unexpended amount aforesaid and which is still unexpended; that his position of expert on system and organization has existed ever since June 5, 1915, and still exists; that the commissioners refused, and still do refuse, to permit appellee to perform the duties thereof, although appellee been willing to perform the same; that after the discharge of appellee the commissioners designated E. H.

Davenport to perform the duties of his said position, and that the commissioners are attempting to pay him for performing the duties thereof out of the treasury of the city of Chicago and from the funds originally appropriated by the city council to pay the salary of appellee; that said Davenport performs the duties of said position illegally and in violation of the terms of the Civil Service law; that no charges of any kind have ever been preferred against appellee, and that the city treasurer and comptroller refuse to pay him his salary.

The main objection raised to the petition in this case by appellants is based upon the assumption that appellee is seeking to be re-instated to an office of the city of Chicago. It is then urged that the general demurrer to. the petition should have been sustained by the court because there is no general law or statute providing for the office of expert on system and organization, and that the petition does not plead or set forth any ordinance of the city of Chicago passed by a two-thirds vote of all the aldermen elected, as provided by section 2 of article 6 of the Cities and Villages act, (Hurd's Stat. 1916, p. 311,) creating such an office, and that it is not even averred there is such an ordinance. There is no such an office of the city of Chicago as expert on system and organization provided by any law or statute in this State. It has been repeatedly held by this court that the city of Chicago, or any other city in this State bound by the provisions of said section, cannot create an office except by an ordinance passed in accordance with the provisions of said section. One seeking by *mandamus* to compel a restoration to an office must show in his petition that the office legally exists where it is created by ordinance and that he has a legal right to it, and the ordinance should be properly pleaded, as the burden is upon him to show his right to the office,—*i. e.*, that he is an officer *de jure* as distinguished from an officer *de facto*. *Stott* v. *City of Chicago*, 205 Ill. 281; *McNeill* v. *City of*

*Chicago,* 212 id. 481; *Moon* v. *Mayor,* 214 id. 40; *Bullis* v. *City of Chicago,* 235 id. 472; *Gersch* v. *City of Chicago,* 250 id. 551.

The petition of appellee does not contain the averment that said position of expert on system and organization is an office. The prayer of the petition is not for restoration to an office or that he be paid his salary as an officer, but that he be restored to the "said position of expert on system and organization." The petition does not contain any allegation that the appropriation ordinances heretofore referred to, appropriated moneys for the payment of any salaries of officers known as experts on system and organization. The allegations as to all of said appropriation ordinances are practically the same. The allegations as to the ordinance of January 16, 1915, are in this language:

"On, to-wit, January 16, 1915, the city council of the city of Chicago duly passed and enacted a certain valid ordinance appropriating the sum of $6500 for two positions or places of employment to be known as expert on system and organization, at a salary of $3000 a year for one of said positions and a salary of $3500 per year for the other of said positions, which said ordinance was and is in the words and figures following, to-wit:

"An ordinance making appropriations for corporate * * * purposes for the fiscal year from January 1, 1915, to December 31, 1915.

"*Be it ordained by the city council of the city of Chicago:*

"Sec. 1. That the following amounts, or so much thereof as may be authorized by law and as may be needed, be and the same are hereby appropriated for the corporate purposes of the city of Chicago * * * for the fiscal year beginning January 1, 1915, and ending December 31, 1915. * * *

"Sec. 5. That the titles and the compensations fixed herein for same, of positions under civil service, are and shall be construed to be the official civil service titles and the

official compensation for same for which appropriations are made. * * *

*"Civil Service Commission—Efficiency Division.*
"Salaries and wages—

> Examiner in charge of efficiency division...........$4,500.00
> Expert on system and organization................. 3,500.00
> Expert on system and organization................. 3,000.00
> Examiner of efficiency (technical) four at $2,160.00.. 8,640.00"

In the notice that appellants, said civil service commissioners, gave to appellee notifying him of his suspension and the alleged abolition of said position, the position is not referred to as an office. Appellants are therefore not warranted in the assumption that appellee charges himself to have been removed from an office or that he thereby prayed that he be restored to an office. His petition, carefully scrutinized, all through shows clearly that he refers to his employment as a position or place of employment and not as an office. In many cases it is difficult to determine whether a person is an officer or merely an agent or employee of a municipality. It is even more difficult to lay down any fixed rule to determine the question, in all cases, as to whether a person is an officer or merely an agent or employee of a municipality. Generally, an officer takes an oath of office, while a mere agent or employee does not. The duties and services of a mere employee are purely ministerial, and he is not clothed with discretion nor with power to represent or bind the corporation. (28 Cyc. 585.) An office is a place in a governmental system created or recognized by the law of the State, which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties. A position is analogous to an office in that the duties that pertain to it are permanent and fixed, but it differs from an office in that its duties may be non-governmental and not assigned to it by any public law of the State. An employment differs from both an office and

a position in that its duties, which are non-governmental, are neither certain nor permanent. (*Fredericks* v. *Board of Health,* (N. J.) 82 Atl. Rep. 528.) There is no office in this State recognized by statute of expert on system and organization. From the allegations in this petition it cannot be said the employment in question is an office within the meaning of section 2 of the Cities and Villages act. The court could not say, as a matter of law, from the allegations in the petition, that the said employment is an office. The authorities relied upon by appellants are therefore not in point in determining the question whether or not the court properly overruled appellants' demurrer.

An employment by a municipal corporation, in the absence of statutory or charter provisions, need not necessarily be by a formal ordinance, by-law or resolution. It may be by contract, express or implied. (28 Cyc. 586.) The allegations of the petition only warrant the conclusion that the place of expert on system and organization therein referred to is an employment or position. A position, which is in the nature of a permanent employment, may, in the absence of statutory or charter provisions, be created without the requirement of a formal ordinance, by-law or resolution. There is no statute in this State that prescribes the manner or method of creating a position or an employment by a city. Said appropriation ordinances in each instance amounted to direct authority by the city council of the city of Chicago to the civil service commissioners to examine, certify, classify and have employed, in accordance with the Civil Service law, an employee for said position or employment. (*People* v. *McCullough,* 254 Ill. 9; *Fergus* v. *Russel,* 270 id. 304.) The acts of the city of Chicago in repeatedly passing appropriation ordinances for the salary of the place in question, and the action of the civil service commissioners in certifying appellee for appointment to said place, and his appointment and acceptance thereof in pursuance of the Civil Service law, show clearly

a legal employment or appointment of appellee to the position aforesaid, and the allegations in the petition are ample to charge the existence of said position and the employment thereto by the city of Chicago.

It is also contended by appellants that the civil service commissioners of the city of Chicago are not officers of the city but constitute a body corporate existing as an independent corporation, created by statute for the performance of certain designated functions, and is not subservient to the authority vested in the city council, and that there is no law prohibiting them from discharging their own employees or officers. We cannot accede to this proposition. By section 1 of the Civil Service law it is provided that the mayor of each city in this State which shall adopt the law shall appoint three persons, who shall constitute and be known as the civil service commissioners of such city until their respective successors are appointed and qualified, and that in every year thereafter he shall appoint a successor to one of said commissioners and to their successors, etc.; that they shall hold no other lucrative office or employment under the United States, State of Illinois or any municipal corporation or local division thereof, and shall, before entering upon the duties of their office, take the oath prescribed by the constitution of this State. Section 2 provides that the mayor may remove the commissioners from office, at his discretion, for incompetency, neglect of duty or malfeasance in office. By section 3 they are required to classify all the offices and places of employment in such city with reference to the examinations provided for in the said act, except those offices and places mentioned in section 11 thereof. By section 18 their salaries are fixed, and in addition thereto they are authorized to incur expenses, not to exceed $5000, for clerk hire, printing and other incidental matters. By section 19 the city is required to appropriate each year a sufficient sum to carry out the provisions of the act in such city and is required to pay the

salaries and expenses of the officers provided for in said act. The act nowhere permits the commissioners to raise money themselves, by taxation or otherwise, for their purposes or for any purposes of the act. They can only expend for the particular incidentals mentioned in said section 18 the said sum of $5000 under the law in force when this suit was brought, and the city is required to pay that expense. The act clearly makes the commissioners officers of the city and not of any other corporation whatever. They are not given any power to examine, certify, appoint or discharge any officers or employees except those of the city of Chicago. No officer or employee of the city, other than those specially exempted by said section 11, can be appointed or discharged or examined or certified or registered as an eligible for any office or place of employment except by the aid of the civil service commissioners of the city. They are therefore exercising governmental functions for the city and as its officers, and, being officers of the city, the officers or employees under them are the officers or employees of the city and can only be discharged in the same manner as any other officers or employees of the city under the Civil Service law. Had the statute expressly made them a corporate body to give them corporate existence and invest them with their powers and duties under the Civil Service law, that, alone, would not prevent them from being a part of the municipal government. Under the law which created them the commissioners would be wholly unable to effect the objects of their creation without the active co-operation of the city council. They are therefore clearly a branch or agency of the municipal government. *Board of Water Comrs.* v. *People,* 137 Ill. 660.

The power to create positions given the civil service commissioners is not vested in the commission itself by any provision of the statute. The power to create offices, positions and employments of the city belongs to the city itself. The employees of the commission being city employees, it

282 – 39

was the right of the city to create or authorize them as well as its duty to appropriate the necessary money to pay such employees, but the manner of their employment and their discharge, as well as their examination and certification for employment, is regulated by the Civil Service law and in the same manner as that of all other city employees. The Civil Service law is necessarily a part of the contract of employment of every civil service employee, and such an employee can only be discharged in the manner provided by section 12 of said act. It is alleged in the petition, in substance, that no charges were preferred against appellee and that the alleged abolition of the position in question was a mere pretense, and was for the unlawful purpose of discharging or getting rid of appellee as such employee and of substituting in his place another party, without in good faith actually abolishing the position. If these allegations are true the position still exists and appellee has shown a complete right to be restored to such position. While the city has a right to actually and in good faith discontinue any position when the same becomes no longer necessary or useful, yet neither it nor the commission had any right to continue the position in force and to remove appellee until charges had been preferred against him and sustained by the commission in the manner provided by section 12 of the Civil Service law. (*City of Chicago* v. *Luthardt,* 191 Ill. 516.) Neither the city nor the commission, nor both combined, can legally abolish a position temporarily for the unlawful purpose of later re-establishing it and installing therein another person as employee. To permit such a course of conduct by the judgment of this court would be, in effect, to declare the Civil Service law a dead letter or a law enforcible only at the discretion of said city officers, whose positive duty, under the law, is to enforce it, or assist in enforcing it, according to its terms.

Appellants rely on the case of *City of Chicago* v. *People,* 210 Ill. 84, as sustaining their contention that the pe-

tition is obnoxious to a demurrer in seeking two kinds of relief: re-instatement of petitioner and the collection of his salary. The demurrer in this case is a general demurrer and does not specially challenge the petition on that ground. In the absence of a special demurrer, where the petition is otherwise sufficient, this court will not deny the writ of *mandamus* simply because the petition asks the court to compel the performance of two different acts. In such case it may be issued for a part of the relief sought and denied as to a part, or the whole of the relief may be granted in the absence of a specific objection or defense that only a part of the relief should be granted. *Illinois Watch Case Co.* v. *Pearson,* 140 Ill. 423; *People* v. *Brady,* 262 id. 578; *People* v. *Stevenson,* 272 id. 215.

Some of the allegations in the petition may amount to no more than mere conclusions of the pleader, as contended by the appellants. The material allegations of the petition, however, are statements of material and ultimate facts, and the petition was clearly sufficient, as ruled by the court, and was not obnoxious to a general demurrer.

The judgment of the Appellate Court is therefore affirmed.                    *Judgment affirmed.*

Subsequently, after a rehearing had been granted, the following additional opinion was filed:

Per CURIAM: In a petition for rehearing in this case our attention has been called to the fact that the judgment of the circuit court was rendered January 10, 1916, and provided that the relator be paid his salary up to the date of his re-instatement; also that the appropriation ordinances referred to in the opinion by which the position held by the relator was created expired at the end of the respective fiscal years in which they were passed, and the last ordinance pleaded, appropriating compensation for the relator, was for the year 1915, which appropriation expired December 31, 1915. There was an unexpended balance of

the amount appropriated by said ordinance to pay the re-lator for that year, as alleged in the petition and stated in the foregoing opinion, of $2333.33. Whether relator, upon being re-instated, should have been adjudged compensation from the city for more than the above amount, or for any period beyond the year ending December 31, 1915, depends upon whether similar ordinances have been passed appro-priating compensation for the years subsequent to 1915 to the date of his re-instatement as ordered by the court. The order and judgment of the circuit court rendered on the above mentioned date was "that a peremptory writ of *man-damus* issue forthwith against Percival B. Coffin, Charles E. Frazier and Joseph P. Geary, as civil service commis-sioners of the city of Chicago, E. H. Davenport, Charles H. Sergel, as city treasurer of the city of Chicago, and Eugene R. Pike, as city comptroller of the city of Chicago, commanding the said Percival B. Coffin, Charles E. Fra-zier and Joseph P. Geary, as civil service commissioners of the city of Chicago, to forthwith restore your petitioner to the said position of expert on system and organization, sal-ary $291.66⅔ per month, and to permit him to discharge the duties thereof, and commanding the said Charles H. Sergel, as city treasurer of the city of Chicago, and Eugene R. Pike, as city comptroller of the city of Chicago, and the city of Chicago, to pay or cause to be paid to your petitioner out of the funds of the city of Chicago appropri-ated for that purpose a sum of money equal to the amount due him as salary for the performance of the duties of said office or position of expert on system and organization, salary $291.66⅔ per month, at the rate of $291.66⅔ per month from the 8th day of May, 1915, up to the time at which he shall be re-instated in said position."

While the last part of the order above set out directs that the relator be paid by the city his salary from the 8th day of May, 1915, "up to the time at which he shall be re-instated in said position," it is further provided in

the order that the city shall "pay or cause to be paid to your petitioner out of the funds of the city of Chicago appropriated for that purpose," etc. Under a fair construction of the order and judgment of the circuit court the amount which the city is to pay is only to be paid out of the money appropriated for that purpose. In this case the position of relator having been created by an appropriation ordinance, the amount paid can only be whatever has been appropriated by such ordinance. The point is not very material, as the main question involved was the right of the relator to be restored to the position in question, and the order restoring him carried with it the right to the salary or compensation attached to such position as far as an appropriation had been made therefor. There is some conflict in its terms, but reading the entire order and judgment in question it only provides that the relator shall receive pay, by reason of being restored to his position, out of whatever funds had been appropriated by the city for the purpose of paying his salary, and accordingly he would be only entitled to pay up to the time for which an appropriation has been made by any ordinance for his compensation. If the last ordinance appropriating pay was the ordinance of 1915 and there was no ordinance making an appropriation for that position after that, then the order of the court entered January 10, 1916, directing that he be paid up to the time of re-instatement, may be disregarded, as it would only apply if there had been a subsequent appropriation. Thus construed the judgment of the circuit court was proper.

Perceiving no reason to disturb the decision of the court heretofore rendered, the opinion is therefore re-adopted as the opinion of the court, and in accordance therewith the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*