John Dianis, Mayor of the Village of Wauconda, Plaintiff-Counter-defendant, Appellee-Cross-Appellee, *v.* Annette Waenke *et al.*, Trustees of the Village of Wauconda *et al.*, Defendants-Counterplaintiffs, Appellees-Cross-Appellants.—(Joseph Kidd, Trustee of the Village of Wauconda, Defendant-Counterdefendant, Appellant-Cross-Appellee.)

(No. 74-380; ▮▮▮▮▮▮▮▮)

Second District (1st Division)—June 6, 1975.

Kvistad & Dunn, of Chicago, for appellant.

Overholser, Flannery & Dunlap, of Libertyville, and John E. Schultz, of Waukegan, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

The mayor (who may also be referred to as president) of the village of Wauconda, John Dianis, instituted a declaratory judgment action against the village and its six trustees, seeking a declaration that a certain ordinance and resolution enacted into law by the Board of Trustees over his veto were invalid as contrary to the provisions of article III of the Illinois Municipal Code dealing with officers. (Ill. Rev. Stat. 1973, ch. 24, par. 3–1—1 *et seq.*) The trustees, with the exception of trustee Joseph Kidd, filed a counterclaim praying that the ordinance and resolution attacked by the mayor, as well as two other ordinances, be declared valid. Trustee Kidd has appealed and the other five trustees have cross-appealed from the order of the trial court which, as will be more fully detailed below, adjudicated the validity of the ordinances and the resolution and which made certain related findings. Mayor Dianis, whose position on appeal is aligned with that of trustee Kidd, has not appealed from the order entered below but has filed a brief in this court as appellee–cross-appellee. Broadly stated, the instant dispute concerns the manner and method by which a village may lawfully secure legal counsel and a chief of police. The dispute centers upon whether these jobs may be filled by the joint vote of the Board of Trustees and the mayor or whether they must be filled by the appointment of the mayor with the advice and consent of the Board.

The background facts relative to the village legal counsel may be traced to the nomination by the mayor of one Wallace Dunn to the position of village attorney. It appears that under the then existing ordinances of the village of Wauconda the mayor had the power to appoint the village attorney with the advice and consent of the Board of Trustees. The nomination of Dunn was apparently disapproved by the Board of Trustees and Mayor Dianis stated that he would make successive 30-day appointments of Dunn as village attorney for the next 4 years. Beginning on August 7, 1973, and continuing until April 2, 1974, Mayor Dianis did make such successive 30-day appointments. On December 4, 1973, Mayor Dianis nominated Dunn as permanent village attorney, but on February 4, 1974, the Board disapproved the appointment.

On February 5, 1974, the Board passed Ordinance 1974-0-1 which became effective upon a 5-1 vote (trustee Kidd opposing the measure), overriding the mayor's veto. This ordinance amended the Municipal Code of the village by abolishing the office of village attorney for the village of Wauconda. Subsequently, the Board of Trustees passed Ordinance 1974-0-2, and it also became effective by a 5-1 vote (trustee Kidd opposing the measure), overriding the mayor's veto. This ordinance

amended the Municipal Code of the Village by providing, in relevant part, as follows:

> "*The president and the Board of Trustees, voting jointly,* may employ an attorney or attorneys, as an independent contractor or as independent contractors, to represent or advise the Village on such legal matters as the Board of Trustees shall determine." (Emphasis added.)

On April 2, 1974, the Board adopted a resolution over the mayor's veto, employing the law firm of Overholser, Flannery, Dunlap & Graham, Ltd., as village legal counsel. This resolution also directed the law firm:

> "\* \* \* to attend the Village Board meetings so as to serve as counsel to the corporate authorities, to act as Village Prosecutor, to draw up Ordinances, contracts and other legal documents as requested by the corporate authorities, as well as to perform such other legal services as may be directed by the corporate authorities."

By resolution, this firm represents the village and the Board of Trustees in this action. The trustees also passed a resolution directing Dunn to turn over all village legal work to the Overholser firm by May 1, 1974, and also providing that Dunn's employment as village attorney was to cease as of that date. The firm then represented the village in various legal matters up to August 30, 1974, the date of the trial court's decree.

The background facts with respect to the position of chief of police are as follows. On or about May 6, 1973, the then chief of police of the village of Wauconda resigned and left the area. For some years prior to that date and continuously since then through the present time, the village of Wauconda, pursuant to statutory authority, had a Police and Fire Commission. Ordinance 602 of the village of Wauconda provided, in relevant part, as follows:

> "The Board of Fire and Police Commissioners shall appoint all officers and members of the Fire and Police Departments \* \* \* except that *the office of Chief of Police* and Chief of the Fire Department *shall be appointed by the president of the Village of Wauconda with the advice and consent of the Board of Trustees of the Village* \* \* \*." (Emphasis added.)

On October 2, 1973, the mayor appointed one Captain John G. Now, Jr., as temporary acting chief of police for 30 days. On October 18, 1973, the Board adopted a motion disallowing the appointment, apparently due at that time to the absence of required psychological and polygraph test results. The results of said tests were subsequently submitted to the Board, during which time Captain Now remained acting chief of police.

Mayor Dianis then appointed Now as chief of police and, on February 5, 1974, the Board disapproved the nomination.

On February 19, 1974 the Board passed Ordinance 1974-0-3 by a 5-1 vote overriding the veto of the mayor, amending the Village Municipal Code to provide that, instead of the mayor appointing the chief of police with the advice and consent of the Board, the chief of police should be appointed:

> "*  *  * *by the president of the Village of Wauconda and the Board of Trustees of the Village of Wauconda voting jointly *  *  *.*" (Emphasis added.)

The Mayor made successive appointments of Captain Now as temporary acting chief of police on March 5, April 2 and May 7, 1974. The Board of Trustees passed a resolution on June 18, 1974, stating that it did not consent to the appointment of Captain Now as permanent chief of police. From his initial appointment on October 2, 1973, to the present, Captain Now has been serving as acting chief of police, he being the highest ranking officer of the village police department.

The instant declaratory judgment suit was filed on May 7, 1974, by Mayor Dianis, as noted above, against the village and the six trustees seeking to declare Ordinance 1974-0-2 and the resolution passed pursuant thereto (employing Overholser, Flannery, Dunlap & Graham, Ltd.) invalid. The five trustees who supported the ordinances counterclaimed, seeking to have Ordinances 1974-0-1, 1974-0-2 and the aforesaid resolution and Ordinance 1974-0-3 declared valid. Trustee Kidd filed an answer to the mayor's complaint in which he admitted the allegations contained therein and further responded to the counterclaim by seeking its dismissal as moot or alternatively seeking a declaration that Ordinance 1974-0-3, pertaining to the appointment of chief of police, was invalid.

The trial court entered its decree on October 30, 1974, finding, in substance, as follows:

(1) Ordinance 1974-0-1 valid;

(2) Ordinance 1974-0-2 and the resolution passed pursuant thereto relative to village legal counsel, invalid;

(3) Ordinance 1974-0-3, relative to the appointment of village chief of police, invalid;

(4) Ordering the mayor to find and submit the name of a new appointee for the position of chief of police;

(5) Finding that the Municipal Code of the village of Wauconda, as existing prior to the adoption of Ordinance 1974-0-3, shall remain in effect; and

(6) Finding that, pursuant to Ordinance 1974-0-1, which abolished the office of village attorney, the village must function without a village attorney until such office is created or until other arrangements are made.

Trustee Kidd appeals from those findings of the trial court numbered (4) and (5) above. The other five trustees and the village cross-appeal from those parts of the decree holding Ordinance 1974-0-2, the resolution passed pursuant thereto and Ordinance 1974-0-3 invalid. No one has appealed from that part of the decree holding Ordinance 1974-0-1, which abolished the office of village attorney, valid.

██ We first consider whether the trial court erred in finding invalid both Ordinance 1974-0-2 and the accompanying resolution. The trial court based this finding upon its conclusion that the ordinance and the resolution are "contrary to the provisions of Chapter 24, Secs. 3—7—1 through 3 inclusive." For convenience, we note that the Illinois Municipal Code is divided into 11 articles, the articles are divided into divisions and the divisions are further divided into sections. Our principal focus herein will be on article III of the Code which is entitled "Officers." Division 7 of article III of the Code is entitled "Appointed Officers in Cities." Division 8 of article III of the Code is entitled "Appointed Officers in Villages." The section of article III of the Code with which we are principally concerned in the resolution of this issue, section 3—8—1, provides in part as follows:

"The president, by and with the advice and consent of the board of trustees, may appoint (1) a treasurer; (2) one or more street commissioners; (3) a village marshal; and (4) such other officers as may be necessary to carry into effect the powers conferred upon villages." (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 24, par. 3—8—1.)

The issue presented, then, is whether a village may validly employ an attorney as an independent contractor by the joint vote of the Board of Trustees and the president to provide such legal services to the Village as the Board has set forth in its resolution without conflicting with the provisions of section 3—8—1 of article III of the Code. That is, is such an attorney an "officer" within the meaning of this section and therefore subject to appointment by the president? The term "officer" will be used herein, as in the Code, as a term of art and as distinct from the term "position." As commonly understood, "office" has a higher status than "position."

Trustee Kidd, as supported by Mayor Dianis, argues that the abolition of the office of village attorney and the creation of an independent contractor position which, "for all practical purposes provides similar

representation and legal services" is a bad faith attempt on the part of the Board to avoid this section of the Code which vests the power of appointment and removal of municipal officers in the president. We disagree with this and the numerous other contentions of both trustee Kidd and Mayor Dianis on this issue and find that the enactment of the ordinance and resolution under consideration was within the powers of the Board of Trustees of the village of Wauconda and not contrary to State law.

At the outset, we note that our present concern is with the validity, not the wisdom, of the enactments at issue. In testing such validity we are guided by the intent of the legislature, principally determined by the plain meaning of the words used in the Code. The instant enactments may not be held void upon a mere showing that the legislature provided one method by which a village may procure legal services and the village chose another method unless it is also shown that the legislature intended its method to be exclusive.

■■ It is apparent that trustee Kidd's attack upon the Board's action as bad faith is not well taken in light of the familiar principle that:

> "As a general rule, in determining the validity of a municipal ordinance, the court is not concerned with and has no jurisdiction to inquire into the motives or to determine the propriety of the policy which prompted the enactment of the ordinance. (*Deerfield Park District v. Development Corp.*, 22 Ill.2d 132, 174 N.E.2d 850.) Once it is determined that there is competent authority for the passage of an ordinance, the presumption is always in favor of its validity. [Citation.]" (*Pence v. Village of Rantoul* (1973), 12 Ill.App.3d 446, 450, 298 N.E.2d 775, 778.)

While the above general rule is, perhaps, subject to the exception that municipal ordinances may be impeached for fraud at the instance of the person injured thereby (*People ex rel. Lockwood & Strickland Co. v. Grand Trunk Western Ry. Co.* (1908), 232 Ill. 292, 299, 83 N.E. 839, 842), no evidence exists in this case to invoke this exception.

■ Furthermore, Kidd has attempted to support his attack upon the enactments by citing several cases involving tenured positions and offices under the Civil Service Act. (Ill. Rev. Stat. 1973, ch. 24, par. 10—1—1, *et seq.*) He argues that an analogy exists between the present case and cases in which the courts have struck down attempts to evade the Civil Service Act by abolishing an office or position thereunder for the ulterior purpose of substituting one person for another. (See, *e.g., People ex rel. Jacobs v. Coffin* (1918), 282 Ill. 599, 119 N.E. 54.) However, this rule does not apply to an office or position which is not protected by some type of tenure law. (*People ex rel. Adamowski v. Wilson* (1960), 20

Ill.2d 568, 170 N.E.2d 605.) Offices which are created by ordinance do not involve tenure but are held at the appointing power's pleasure. (*Anderson v. City of Jacksonville* (1942), 380 Ill. 44, 41 N.E.2d 956.) The power which creates an office can abolish it. (*People ex rel. Smith v. City of Chicago* (1940), 374 Ill. 157, 28 N.E.2d 93.) In addition, the reason for the rule applying in cases involving attempts to evade the civil service laws is to protect one who has been duly appointed to an office or position on some permanent basis and not to continue the existence of an office. We, therefore, reject the attempt to analogize this situation to situations involving attempts to evade civil service law and find the citation of cases on this point inapposite.

■ Under article III, section 3—8—1 of the Code pertaining to villages, the president's power of appointment is limited to officers. The following definition of the term was stated by the supreme court in *People ex rel. Jacobs v. Coffin*, at 282 Ill. 599, 606, 119 N.E. 54, 57:

> "In many cases it is difficult to determine whether a person is an officer or merely an agent or employee of a municipality. It is even more difficult to lay down any fixed rule to determine the question, in all cases, as to whether a person is an officer or merely an agent or employee of a municipality. Generally, an officer takes an oath of office, while a mere agent or employee does not. The duties and services of a mere employee are purely ministerial, and he is not clothed with discretion nor with power to represent or bind the corporation. [Citation.] An office is a place in a governmental system created or recognized by the law of the State, which either directly or by delegated authority assigns to the incumbent thereof the continuous performance of certain permanent public duties."

While the above is useful as a general definition, it must be qualified by the rule that if a municipal office was not recognized as such at common law or has not been provided for by the constitution or by statute, it cannot exist unless created by ordinance. (*City of West Frankfort v. Industrial Com.* (1950), 406 Ill. 452, 94 N.E.2d 413; *People ex rel. Siegal v. Rogers* (1947), 397 Ill. 187, 73 N.E.2d 316.) No contention is made herein that the office of village attorney either existed at common law or has been provided for by the constitution. Rather, it is contended that the office has been created by statute and by ordinance. In our view, the office of village attorney has neither been created by statute nor by Ordinance 1974-0-2.

In *County of Cook v. Industrial Com.* (1973), 55 Ill.2d 540, 304 N.E. 2d 616, the supreme court was faced with the question of whether a juvenile probation officer was an employee or an official of Cook County

for purposes of Workmen's Compensation benefits. In finding the claimant was an employee rather than an official of the county the court observed the following:

"An 'official' within the meaning of section 1(b) of the Workmen's Compensation Act has been held to be one who was either recognized as a public official at common law or who holds a public 'office' created by the constitution or by law. * * * Only in those cases where a position was specifically designated as an 'office' have we found the individual occupying such a position to be an 'official' within the meaning of the Act. [Citations.]

The County of Cook suggests that the Juvenile Court Act creates the office of probation officer by providing for appointment of probation officers by the chief judge of the circuit [Citation.] It is also argued that probation officers perform fixed public duties involving the exercise of discretion, that the position requires the taking of an oath of office and that probation officers are appointed to serve at the pleasure of the appointing power, all of which are characteristics of persons holding public office. The answer to the County's arguments in this regard is that notwithstanding the foregoing factors, a person is not an official unless he actually holds an office. A statute or ordinance does not create an office by merely referring to the position or providing for appointment thereto but must definitely state that an office has been created. [Citations.] As we stated in *Krawiec* [*Krawiec v. Industrial Com.* (1939), 372 Ill. 560]: 'We cannot agree that because decedent took an oath of office, made a bond, was called an officer, or because his tenure was called "term of office" he thereby became an "officer" when no "office" was actually in existence.' (372 Ill. at 564.)" (55 Ill.2d 540, 542-44, 304 N.E.2d 616, 617-18.)

In light of the foregoing, we agree with the contention of the trustees that section 3—8—1 of article III of the Code does not create the office of village attorney. Rather, that section merely provides permissive enabling legislation to authorize the creation of village offices besides those established by statute.

■■ Mayor Dianis argues that even if section 3—8—1 of Article III does not create an office of village attorney, the provisions of article III, sections 3—7—1 through 3—7—3, relating to cities, apply to this case when construed together with sections 3—12—2, 3—12—3 and 3—12—5 of article III of the Municipal Code. Division 12 of article III of the Code is entitled "Functions and Duties of Village and Incorporated Town Officers." Sections 3—12—2, 3—12—3 and 3—12—5 of article III

provide that, except as otherwise provided in the Code, a president of a village, the trustees of a village and the board of trustees of a village shall have the same powers and perform the same duties as their respective city counterparts—*i.e.*, mayor, alderman and city council. Article III, sections 3—4—19 and 3—7—1 of the Municipal Code grant the city council power to provide for the election or appointment, respectively, of certain city officers. Enumerated therein is corporation counsel. In the discretion of the city council section 3—7—1 of the Municipal Code provides, in pertinent part, for the appointment of corporation counsel and, alternatively, section 3—4—19 provides, in pertinent part, for the election of corporation counsel. Section 3—7—3 of article III of the Code mentions the office of city attorney, but it does so in the following manner:

> "*If* the office of city attorney is established, the occupant shall be appointed by the mayor  *  *  *." (Emphasis added.)

We do not find that section 3—7—1 and section 3—4—19 of article III of the Code are useful in the resolution of this issue, nor do we find that article III, section 3—7—3 creates the office of city attorney; rather, it sets forth the manner of appointment should the office be created. Furthermore, we find that the general language of sections 3—12—2, 3—12—3 and 3—12—5 of article III does not mandate the application of the provisions of Division 7 (appointed officers in cities) to the provisions of Division 8 (appointed officers in villages) of article III of the Code. Specific statutory language controls over general language. (*Frank v. Salomon* (1941), 376 Ill. 439, 34 N.E.2d 424.) We find, therefore, that the office of village attorney has not been created by statute.

■■ Has the office been created by ordinance? We think not. First, the title of the position "legal counsel" does not create an office where the text of the ordinance indicates a clear intent, as we think this ordinance does, to not create the office. In addition, the abolition of the office of village attorney by ordinance 1974-0-1 is indicative of the Board's intent. Further, the position of the village legal counsel, as created, differs from an "office" in that the attorney under the ordinance is not required to take an oath of office or give bond; he lacks the emoluments of office in that he is to be paid only on an hourly basis rather than on a salaried basis; he is under the control retained by the Board rather than being possessed of discretionary powers; and he has no term of office but his relationship with the Board can be terminated at any time. Therefore, we find that neither the statutes nor the ordinance create an office subject to appointment by the Mayor.

■■ We next consider whether the Board had the authority to enact Ordinance 1974-0-2 and the accompanying resolution. The Board of

Trustees has the authority to hire individuals as employees or independent contractors as implied from their power to control the finances and property of the city. (*People ex rel. Faulstich v. McBrien* (1941), 311 Ill.App. 653, 37 N.E.2d 576.) We find no statutory provision which prescribes the manner in which the board must or may hire employees or independent contractors. (*People ex rel. Jacobs v. Coffin; Board of Water Commissioners v. People ex rel. City of Springfield* (1891), 137 Ill. 660, 27 N.E. 698.) We therefore find no impediment to the joint-vote method of employing independent contractors. The fact that joint-vote method of appointing officers under the forerunner of article III, section 3—8—1 of the Code was abolished (see Historical Note following Ill. Ann. Stat. ch. 24, § 3—8—1 (Smith-Hurd 1962)) has no application to the method of employing employees and independent contractors.

■■ It has also been held that it is entirely proper for a village to have employees and independent contractors performing any or all of the legal services required by the village. (*Hope v. City of Alton* (1905), 214 Ill. 102, 73 N.E. 406; *Woods v. Village of La Grange Park* (1936), 287 Ill.App. 201, 4 N.E.2d 764.) It should be noted that while on a subsequent appeal from the granting of a new trial in *Woods*, the court, on the subsequent appeal at 299 Ill.App. 1, 19 N.E.2d 406, held that the village had created the office of village attorney by ordinance, the court indicated that there had been no showing that the ordinance had been repealed. That is, while the village's power to appoint an attorney as an officer was therein recognized, the court did not deal with the issue of whether the village might choose to employ an attorney on a nonofficer, independent contractor basis.

We therefore find that since no office of village attorney has been created by statute or Ordinance 1974-0-2, and since the Board of Trustees has the power to employ an attorney on a nonofficer basis and to provide for his selection by the joint-vote method, the trial court erred in holding Ordinance 1974-0-2 and its accompanying resolution invalid.

We next consider whether the trial court erred in finding Ordinance 1974-0-3 invalid relative to the appointment of the village chief of police. As noted above, this ordinance amended the Municipal Code of the village of Wauconda which had provided for the appointment of a chief of police by the president with the advice and consent of the board, to provide for said appointment by the joint vote of the president and Board of Trustees. In its decree, the trial court failed to indicate the reason for its finding of invalidity.

As noted above, the village of Wauconda had a Police and Fire Commission. Article X of the Illinois Municipal Code is entitled "Employees and Employment" and division 2.1 thereof is entitled "Board of Fire

and Police Commissioners." Section 10—2.1—4 of article X of the Code (Ill. Rev. Stat. 1971, ch. 24, par. 10—2.1—4) provides in part as follows:
  "Fire and police departments—Appointment of members—Certificates of appointments. The board of fire and police commissioners shall appoint all officers and members of the fire and police departments of the municipality, including the chief of police and the chief of the fire department, *unless the council or board of trustees shall by ordinance as to them otherwise provide;* * * *" (Emphasis added.)

The issue before us then is the meaning of the phrase "unless the board of trustees shall by ordinance as to them otherwise provide." Trustee Kidd argues that the phrase "otherwise provide" must relate back to article III, section 3—7—2, pertaining to cities, and section 3—8—1, pertaining to villages. Upon this basis he goes on to contend that the Board can only "otherwise provide" for the appointment of the chief of police by providing for such appointment by the president with the advice and consent of the Board. We disagree with such an interpretation of the phrase and find that section 10—2.1—4 of article X of the Code grants the Board power to provide, as they have done by Ordinance 1974-0-3, for the appointment of a chief of police by the joint vote of the president and the Board of Trustees.

Clearly, had the legislature intended to so limit the power of the Board, it could have so provided. Instead, this section allows the Board of Trustees discretion to remove the power of appointment of the chief of police from the Board of Police and Fire Commissioners and vest it elsewhere as the Board of Trustees may determine. We find the phrase "otherwise provide" in this statute a clear and unambiguous grant of authority to the Board of Trustees, the clear import of which authorizes the enactment of Ordinance 1974-0-3. See *People ex rel. Bowdish v. Relli* (1959), 23 Ill.App.2d 262, 161 N.E.2d 874; *People ex rel. Cadell v. Board of Fire & Police Commissioners* (1952), 345 Ill.App. 415, 103 N.E.2d 666.

In view of the result we have reached herein, it is unnecessary to consider the points raised by trustee Kidd in his appeal since the viability of those contentions rested upon our upholding the invalidity of Ordinance 1974-0-3.

For the foregoing reasons, the judgment of the trial court finding Ordinance 1974-0-2, its accompanying resolution and Ordinance 1974-0-3 of the village of Wauconda invalid is hereby reversed and the cause hereby remanded for entry of an order not inconsistent with this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and HALLETT, J., concur.