THE PAGE ENGINEERING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(SHERIDAN HALL ALVORD *et al.* Defendants in Error.)

*Opinion filed June 16, 1926.*

1. WORKMEN'S COMPENSATION—*what is measure of employer's responsibility.* The measure of the responsibility of any employer within the Compensation act is the compensation provided for in the act, computed on the basis of the annual earnings of the employee injured.

2. SAME—*when injury to night watchman arises out of and in course of joint hiring.* Where a night watchman is employed by two companies whose properties are adjoining, is required to watch both properties every night and is paid the same sum per month by each company there is a joint hiring, and any injury received by reason of such employment, whether on the property of one or the other of the employers, arises out of the joint employment and there is a joint liability under the Compensation act, as the employee is in the course of his joint employment by both employers when he is on the property of either at any time of the night.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

MAX F. ALLABEN, for plaintiff in error.

JOHN CLARK BAKER, for defendant in error the Chicago Crushed Stone Company.

Mr. JUSTICE DUNN delivered the opinion of the court:

On January 15, 1924, Sheridan Hall Alvord met with an accident in the course of and arising out of his employment by slipping as he stepped on the running-board of a steam crane of the Chicago Crushed Stone Company. He fell to the ground and broke his left arm, and as a result of the injury was totally incapacitated for work for 13-6/7 weeks and sustained a permanent loss of twenty-five per cent of the use of his arm. He filed with the Industrial Commission an application for an award against the Chicago Crushed Stone Company and the Page Engineering Company, and an arbitrator made an award of $14 a week for the 13-6/7 weeks of total disability and for 50 weeks for the twenty-five per cent loss of use of the left arm against the Chicago Crushed Stone Company, but found that the petitioner was not entitled to compensation from the Page Engineering Company because he did not sustain an accidental injury which arose out of and in the course of his employment by the Page Engineering Company. On petition of the Chicago Crushed Stone Company this decision was reviewed by the Industrial Commission, no additional evidence was heard, and the commission made an award of the same amount jointly against the Chicago Crushed Stone Company and the Page Engineering Company. The record was reviewed by writ of *certiorari* sued out of the superior court of Cook county by the Page Engineering Company and the decision of the commission was affirmed. A writ of error was allowed on the petition of the Page Engineering Company.

The only question raised is as to the liability of the Page Engineering Company. Alvord was the night watchman of the Page Engineering Company and of the Chicago Crushed Stone Company. His service began on December 13, 1923. The Page Engineering Company operated a machine shop and the Chicago Crushed Stone Company a garbage disposal plant on adjoining premises in Chicago.

The garbage was unloaded from railroad cars into an old quarry hole by a steam crane. Alvord testified that he learned from a friend that there was an opening at the Page Engineering Company and the Chicago Crushed Stone Company, and that was the reason he happened to go there. He applied to Merwin Armstrong, general manager of the Page Engineering Company, who asked for references, which Alvord gave him. Armstrong told him to come back on December 12, to be approved by Mr. Sullivan. He came back on December 12 and saw Sullivan but did not see Armstrong. He told Sullivan he was sent down by Armstrong for his approval. Sullivan asked for recommendations, which Alvord gave. Sullivan told Alvord to come back the next night at five o'clock. That was December 13. Both Armstrong and Sullivan told him what his duties would be; that he was to watch the Page Engineering Company's property and also the Chicago Crushed Stone Company's property; that Armstrong was his foreman, also James Mahoney, vice-president of the Chicago Crushed Stone Company. Armstrong told him he was to be employed as watchman to watch both companies' property and also to bank the fire of the steam crane belonging to the Chicago Crushed Stone Company. The first night he came there he reported to Armstrong, and Armstrong assigned him to his work. He was to get $65 a month from each of the companies. He received his pay from the Page Engineering Company every Saturday and from the Chicago Crushed Stone Company on the 10th and 25th of each month. The first night he went to work, December 13, he came at five o'clock, went into the shop of the Page Engineering Company and punched his card in. He did this every night and morning. He reported to the Chicago Crushed Stone Company through Armstrong, because Mahoney wasn't there all the time. Mahoney came out once or twice a week. While Alvord was working there Mahoney called at the plant four times and had a conversa-

tion with him about his work, but Alvord saw Armstrong nearly every night. The regular course of his work was that shortly after five o'clock, when the employees of the Page Engineering Company quit work, Alvord put down the windows, turned out the lights and shut off the water from freezing in the pipes for the Page Engineering Company. That would take from twenty to thirty minutes. He then walked over the Page Engineering Company's property. After that he walked to the Chicago Crushed Stone Company's property and boarded the steam crane between 5:30 and 5:40 to examine the fire. He then went up to the end of the Chicago Crushed Stone Company's property. Some days the crane would be at one end of the property, some days in the middle and some days at the other end. Then he opened the office of the Chicago Crushed Stone Company between 5:50 and 6:00 o'clock, examined the office thoroughly, saw that all windows and doors were locked and then returned to the office of the Page Engineering Company, arriving about 6:15 to 6:30. He would do the same thing all over again and repeated this every hour or hour and twenty minutes until 5:30 in the morning, when he spread the fire in the fire-box of the crane and got up about twenty pounds of steam for the day men. He swept both offices between 5:00 and 5:30 and at 6:00 o'clock in the morning he locked up both places. On the night of January 15 he mounted the steam crane to take care of the fire about 5:15 or 5:20. The employees of the Chicago Crushed Stone Company were working overtime. Before this he had put out the lights and drained the water pipes and looked at the fire in the stove of the Page Engineering Company. When he got on the crane the engineer and fireman were banking the fire. They did not finish but ran for the street car. Alvord finished banking the fire, put water into the boiler and then stepped out on the running-board to shut the door. His foot slipped and he fell to the ground, hurting himself as has been stated.

The properties of the two companies are adjoining and run back from Lawndale avenue a block and a half or two blocks. Alvord did not know where the boundary line was between the property of the two companies. He was employed as a watchman, and in addition to general watchman's duties, specific duties were pointed out to him to perform, and a part of his job was to see that there were no marauders around. The closest the steam crane ever got to the factory of the Page Engineering Company was about a quarter of a block, and at the time of the accident he was about from a half to three-quarters of a block away from the engineering company's factory. On the night of the accident Alvord intended on leaving the crane to go up to the end of the property of the Chicago Crushed Stone Company and then retrace his steps to the Page Engineering Company.

The measure of the responsibility of any employer within the Workmen's Compensation act is the compensation provided for in the act, computed on the basis of the annual earning of the employee injured. The definition of "employer" in the act includes "every person, firm, public or private corporation * * * who has any person in service or under any contract for hire, express or implied, oral or written." The definition of "employee" includes "every person in the service of another under any contract of hire, express or implied, oral or written." The plaintiff in error was an employer of Alvord, and its liability depends upon the question whether his injury was sustained in the course of his employment and arose out of it. The Chicago Crushed Stone Company was also an employer of Alvord, and there is no question that his injury was sustained in the course of his employment and arose out of it, and therefore no question of the liability of the stone company.

There was but one contract of employment, by which Alvord undertook to watch the property of both companies and to do certain other services on the property of each.

He had two foremen from whom he received orders, each of whom told him his duties. He was paid the same amount by each company. The contract was more than a concurrent contract of service—it was a joint hiring. The representatives of the companies, acting together, jointly employed Alvord to serve them both each night. He was not employed to give a definite part of his time to the service of each of them but he was employed to watch both properties all night every night, and wherever he was upon the property of either at any time of the night he was in the course of his joint employment by both employers. Any injury received by reason of such employment, whether on the property of one or the other of his employers, arose out of the joint employment.

In *Sargent* v. *Knowlson Co.* 195 N. W. (Mich.) 810, it was held that several persons who, acting individually but with the knowledge of what the others did, employed one to watch their property at night were co-employers, and liable, under the Workmen's Compensation act, for an injury happening to him in the course of his employment while upon the property of one of them. In *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, a night watchman employed by the Western Metal Supply Company was employed at the same time by five other corporations and made regular rounds of the premises of the six employers. The Western Metal Supply Company knew that he was acting as watchman for other employers but did not know the number of such other employers or the identity of all of them. His employment was by a separate agreement with each of his employers and not by any joint agreement. The Industrial Accident Commission found that his employment by the Western Metal Supply Company "was personal in its nature and was intended by the parties to be a contract of hire of an agreed portion of his personal service," and awarded to his widow compensation. The award against the single employer was confirmed for the reason

322–5

that there was no joint agreement between the various employers and no joint employment by them.    In *Curran* v. *Newark Gear-Cutting Machine Co.* 37 N. J. L. 21, a watchman was employed by three' respondents under a joint arrangement whereby each contributed a certain portion of the wages paid him for watching their various premises, and each of the four respondents had made an arrangement with the deceased to watch his premises independently of the others.    The court denied compensation for the watchman's death because there was no evidence justifying the inference that the accident causing it arose out of and in the course of his employment but stated that the general employment of the deceased by all of the respondents was of the character usual in such circumstances, and that it could be well conceived that such an employment by a number of employers, whether jointly or severally, for the purpose of watching their respective premises, might be construed as being a general and continuous employment by all, under which they would be liable for an accident to the employee arising out of and in the course of his employment.    Since the respondents, under the judgment of the court, were held not liable, this statement must be regarded as dictum, but it seems to be consistent with sound reasoning.    These three are the only cases bearing on the question which have come to our attention.

The case of *Schoen* v. *Chicago, St. Paul, Minneapolis and Omaha Railway Co.* 112 Minn. 38, cited by the Chicago Crushed Stone Company as directly in point, is an action on the case and throws no light on the question.

The judgment of the superior court is affirmed.

*Judgment affirmed.*