### SHELL PETROLEUM CORP. et al. v. ROCKLAND OIL CO. et al.

No. 22540. Opinion Filed Jan. 19, 1932.

Clayton B. Prince, A. J. Follens, and Fred M. Mock, for petitioners.

William G. Davisson, for respondents.

RILEY, J. Petitioners bring this original action to review an award of the State Industrial Commission in favor of respondent John Lanthripe and against petitioners.

Petitioners make no contention that the respondent Lanthripe was not entitled to compensation, nor do they complain as to the amount thereof. The only contention made is that petitioners are liable for but one-half of the award, and that the respondent Rockland Oil Company, as employer, and its insurance carrier, Security Union Insurance Company, are liable for the other one-half.

Issues were joined on this question before the State Industrial Commission, and after a hearing, the Commission held ·that the petitioners were liable for the whole of the compensation and that respondent Rockland Oil Company was liable for none.

From the record it appears that for sometime prior to the accident out of which the claim arose, the Shell Petroleum Corporation and the Rockland Oil Company each owned and operated a 20-acre oil and gas lease in Carter county. These leases were separately owned and operated. Neither company had any interest in the lease owned by the other. Respondent Lanthripe was employed by both companies as a pumper. It appears that both leases had been formerly owned by the Hamon interests, and the wells were operated or pumped by a common power unit; that the Rockland Oil Company had purchased one of the leases and one-half interest in the power plant; that thereafter the Shell Oil Corporation purchased the other lease together with the other one-half interest in the power plant. Claimant was employed originally by the Rockland Oil Company. When the Shell Corporation purchased its interest, it also employed claimant to pump its wells. The Rockland Oil Company paid him $105 per month. The Shell Corporation paid him $75 per month, and furnished him a house in which to live at a rental of $30 per month, making his total monthly wage $210. The companies had separate superintendents in charge of their respective leases, and claimant took orders from the Rockland Company superintendent in pumping its wells and from the Shell Corporation superintendent in pumping the wells of that corporation. The claimant also attended to the power plant. His duties were entirely separate except as to the power plant, where it appears his duties were common to both companies. He was paid separately and each company was at liberty to dispense with his services without consulting the other company.

On January 13, 1930, claimant was working on well No. 7, on the lease of the Shell Corporation. The weather was cold and the derrick floor was covered with ice. He had been tightening what is commonly known as the "stuffing box," and making other adjustments, all of which were duties falling wholly within his employment by the Shell Corporation. About the time he had finished the work which he had been instructed to do, he noticed something wrong with the engine at the power plant, which, from his experience, he decided was caused by the gas line becoming choked, which it frequently did in cold weather. The Shell Corporation had been making some repairs on the derrick floor at well No. 7, and there were some loose boards, etc., lying on the floor on the south side, where he would ordinarily leave the floor to go to the power plant. He could not go out in that direction, and when leaving the derrick floor to go to the power plant he would go out on the west side. Some pipe and fittings had been left lying on the derrick floor, all of which were covered with ice and snow. In describing how the accident occurred, he testified:

"A. Well, I—raised up this wrench in my overalls pocket, something went wrong with the power, I was watching the power, was not watching where I was going exactly,—I was not paying any attention, I stepped on that, covered with snow and ice, my foot— * * * Q. Now, at the time of this accident, you say you had been working on No. 7, on the Shell lease? A. Yes, sir. Q. You stated you heard something go wrong with the power? A. It was freezing weather, you know when it gets that kind of weather, the lines choke up, if you have weather in the field, it chokes up and cuts the gas off. Q. When you heard something go wrong with the power, did you state you were going to the power house? A. Yes, sir; what I was fixing to do. Q. What do you mean? A. I was raising up to see. Q. Had you

started towards the power house? A. No, sir; fixing to start. Q. What do you mean? A. Get through with the job on that particular well. Q. You raised up to go to the power house A. Yes, sir. Q. You slipped and fell? A. Yes, sir. Q. You were going to the power house to see what was wrong with it? A. I knowed what caused of it, however."

Petitioners earnestly contend that it was error to require the Shell Corporation and its insurance carrier to pay all of the compensation awarded, and contend that the undisputed evidence shows that at the time of the injury claimant had started to perform a service which was within the scope of his employment by both employers. And that his injuries arose out of and in the course of his employment by both companies. Their position is that while claimant was performing duties relating only to the wells on the Shell lease he was its employee, and while performing duties relating only to wells located on the Rockland lease he was the employee of the Rockland Oil Company, and while performing duties relating only to the power plant he was the joint employee of the two companies and that the thing which he was about to do, or was in the act of doing when the accident occurred, was to adjust the gas line supplying gas to the engine which produced the power to pump all of the wells. They, therefore, contend that it necessarily follows that the injuries arose in the course of and grew out of his joint employment, and therefore the two companies are jointly liable.

Petitioners cite and rely largely upon Page Engineering Co. v. Indus. Comm. (Ill.) 152 N. E. 483, and Sargent v. A. B. Knollson Co. (Mich.) 195 N. W. 810. These are both night watchman cases, and are not exactly in point for the reason that in such employment the watchmen were jointly employed, and while on duty were of necessity looking after or watching the property of all employers at all times, whether upon the premises of any one of them, or while going from the premises of one to the premises of another.

With reference to how the power plant was operated and how and under whose supervision the power plant was kept up, claimant testified:

"Q. Did you operate and run this power house? A. Yes, sir. Q. Were you responsible to each company, the power be kept up? A. No, sir; the Rockland Oil Company didn't have anything to do with the upkeep. Q. You had to keep up the pumping on the Rockland well? A. Yes, sir; the Shell superintendent had charge of the engine, anyhow he gave me instructions, the Rockland Company never paid any attention to it; when I needed any repair, I went to warehouse and got it. Q. You don't know the arrangements as to the handling of the expenses? A. No, sir; I could not say."

This evidence was uncontradicted, and as we view the case, is sufficient to sustain the finding of the Commission. If it was claimant's duty, as a part of his employment by the Shell Corporation, to operate the power plant and to keep it up wholly under the supervision of the Shell Corporation, it could hardly be said that claimant's injury arose out of or in the course of his employment by the Rockland Oil Company to any extent whatever.

In Lucky-Kidd Mining Co. v. St. Indus. Comm., 110 Okla. 27, 236 P. 600, it was said:

"An employee, doing what he was employed to do, and doing it in a way he was expected to do it, when the accident happened, is injured by accident arising out of and in the course of the employment."

From the testimony of claimant quoted above, the Industrial Commission was justified in finding that the claimant was employed by the Shell Corporation, not only to pump its wells, but to operate and care for the engine supplying the power to pump the wells on the leases of both companies.

The evidence is such as to leave it uncertain whether claimant's injury was in any way connected with the operation of the power plant. He was in the act of arising from a position apparently on the floor of the derrick, where he had been performing work solely for the Shell Corporation, when the accident happened. There is some evidence tending to show that his attention was distracted for the moment by sounds from the engine, indicating to him that it was about to stop because the gas line supplying the gas to the engine was becoming choked or stopped up. His duty under his employment by the Shell Corporation required him to attend to the engine, and it was a part of the arrangements between the two companies that the power plant should be kept in repair and operated by the Shell Corporation, and the Rockland Oil Company "didn't have anything to do with the upkeep," and that claimant was not responsible to the Rockland Oil Company to keep the power up.

The case comes within the rule announced in Bamberger Elec. R. Co. v. Indus. Comm. of Utah (Utah) 203 P. 345. There, as here, no joint contract to pay the wages of the

injured employee existed; each company was liable for its share of his wages; either company could discharge the employee from its employ, but neither could discharge him from the employ of the other; there the employee was injured while performing duties to one of his employers and wholly apart from any duty to the other employer. It was held that the employer whose work the employee was performing at the time he was killed was liable for all compensation.

The question of whose employee plaintiff was at the time of the injury being one of fact for the Commission, and there being competent evidence reasonably tending to support its findings, the award must be, and is hereby, affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. ANDREWS, J., absent.