(No. 25226.—

NANCY KRAWIEC, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE CITY OF CHICAGO HEIGHTS *et al.* Defendants in Error.)

*Opinion filed December 12, 1939—Rehearing denied Feb. 7, 1940.*

McCarthy & Toomey, (Frank A. McCarthy, John E. Toomey, and James C. O'Brien, Jr., of counsel,) for plaintiff in error.

Daniel D. Carmell, and Walter F. Dodd, for defendant in error the City of Chicago Heights.

Mr. Justice Farthing delivered the opinion of the court:

Nancy Krawiec, widow of Paul Krawiec, made application under the Workmen's Compensation act to the Industrial Commission for compensation for his death. She alleged that he sustained a fatal injury which arose out of and in the course of his employment. At the hearing before the arbitrator it was stipulated: (1) Respondent the city of Chicago Heights, was operating under and was subject to the provisions of the Workmen's Compensation act. (2) Decedent sustained an accidental injury on February 5, 1938, which resulted in his death on February 8, 1938. (3) On February 5, 1938, the relationship of employee and employer existed between Krawiec and respondent the Chicago Heights Merchants and Citizens Protective Association. (4) No compensation was paid. (5) During the year preceding February 5, 1938, the respondent association paid to decedent the sum of $1387.05 for his services. The questions in dispute were, first, whether the injury arose out of and in the course of the employment of the deceased by the respondents, or either of them; second, whether the relationship of employee and employer existed between him and defendant in error the city of Chicago Heights, on February 5, 1938.

In the year 1935, a group of citizens and merchants met with the officials of the city of Chicago Heights, and asked for more police protection. The reply was that no more men were available, nor were there additional funds to pay more policemen. At a mass meeting, of later date, it was

decided to organize and raise additional funds. The defendant in error association was incorporated and collected the needed money to pay the merchant police. The city requested the association to recommend appointees. In June of 1936, a vacancy occurred. The association recommended Paul Krawiec and he was appointed. His duties were the same as those of his predecessor and consisted chiefly in protecting the business premises, called the downtown district, but, in addition, he was authorized to perform all functions of a regular patrolman. The city of Chicago Heights paid him $25 per month and furnished a car. He was under the direction of a regular police captain or sergeant. On the morning of February 6, 1938, at 1:40 A.M., Krawiec was on duty with officer Leinen, engaged in making a night deposit of money for a bowling alley at the Citizens National Bank. This was a customary service for establishments required to remain open late hours. Krawiec drove the car to the curb in front of the bank on Halsted street, got out of the car, and walked toward the bank. As he approached the door, gunshots were heard, and one bullet struck him. Officer Leinen ran to Krawiec and lowered him to the sidewalk. He was taken to a hospital where he later died.

The evidence showed that on the morning of the accident officers Morey and Bielfeldt were in a restaurant, when they heard the crash of colliding automobiles on Halsted street. Running outside, they saw one car dragging another down the street. The first car broke loose, picked up speed and drove away, despite the shouts of the officers. Officer Bielfeldt ran for the squad car, but it was blocked by a taxi. Officer Morey then fired two shots at the fleeing car. One shot caromed off the street and struck the deceased.

The city of Chicago Heights had in force, February 5, 1938, an ordinance by section 1 of which there was established the police department of the city. By section 2 there

was created the office of chief of police. Section 11 created the office of lieutenant of police, and section 14 provided for the appointment of police patrolmen. Section 15 ordained that the patrolmen should take the oath provided by law for city officers. The proof also showed that the appropriation ordinance of the city for the fiscal year May 1, 1937, to April 30, 1938, included an appropriation for salary of two merchant police at $25 per month. There was proof made of dependency and of hospital and medical bills necessarily incurred in the amount of $216.40.

The arbitrator found that the evidence failed to show that the association was operating under and subject to the provisions of the Workmen's Compensation act, and failed to show that the relationship of employee and employer existed between deceased and this defendant in error. The arbitrator further found that deceased was an official and not an employee of the city, and that the injury did not arise out of his employment. On review, the Industrial Commission confirmed the arbitrator's findings. On *certiorari,* the circuit court confirmed the decision of the commission and we granted a writ of error.

The first question is: Was Krawiec an employee or officer of the city? At common law a policeman was not an officer. The office exists, therefore, only when created by statute or municipal ordinance. (*Moon* v. *Mayor,* 214 Ill. 40.) The ordinance in question, after establishing a police department, goes on to create, by sections 2 and 11 thereof, the offices of captain and police lieutenants. The wording in both sections is certain and definite: "There is hereby created the office of" etc. Section 14 treats of police patrolmen, and ordains: "The city council shall annually, on the first Monday in May, in each year, appoint an operator and such number of police patrolmen as the council may, by resolution, determine to be necessary, who shall hold their office for one year, and until their successors are appointed and qualified, unless sooner discharged as herein provided."

From an examination of the difference of the wording of the sections above quoted it appears that no intent was present to create the office of patrolman, as in the instance of the other offices. The meaning of the framers of the ordinance is made clear; no office was to be created unless such was definitely stated. This varying phraseology admits no other conclusion. A similar ordinance was found in *Murphy* v. *Industrial Com.* 355 Ill. 419. The ordinance there provided as follows: "The mayor shall, with the advice and consent of the city council, appoint for the term of one year, and until their respective successors in office are appointed and qualified, additional police officers in such number as said mayor and city council may deem expedient to assist the chief of police in his official duties. They shall possess the same qualifications, take the same oath and give the same bond as the chief of police of said city." This court held thàt ordinance did not create the office of policeman, and that the power of appointment could not be construed as creating the office.

Defendants in error cite the case of *City of Chicago* v. *Industrial Com.* 291 Ill. 23, in which this court held one Coyle to be an officer. The text of that ordinance is not before us for comparison. However, the ordinance before us does not create the office of patrolman or merchant policeman.

We cannot agree that because decedent took an oath of office, made a bond, was called an officer, or because his tenure was called "term of office" he thereby became an "officer" when no "office" was actually in existence. This was discussed in *Johnson* v. *Industrial Com.* 326 Ill. 553, where this court said: "A public office can exist only by force of law, and it would be a misapplication of terms to call one an officer who holds no office." We hold that deceased was not an officer, but he was an employee of the city.

The circuit court held that the accident did not arise out of or in the course of the employment of decedent. We

reach a different conclusion. The duties of a policeman bring him into the perils of the night and into the dangers of the community. Where crime and riot and disturbance occur, there the patrolman must go. Service takes him upon the public ways of his district, and evils lurking there are to him not the "risk of the streets," but the danger of his calling, the very nature of which accents the threat of harm by violence.

It is contended that there is no evidence showing deceased was doing anything that in any manner exposed him to greater risk of being shot than the ordinary person. With this we do not agree. It is contended that there was no intent to molest deceased, that the shooting was by a brother patrolman at a third party, and the resultant injury accidental. In *Combes* v. *Industrial Com.* 352 Ill. 399, a janitor of an apartment building, who had been instructed to investigate questionable strangers, saw a tenant and a stranger talking in the basement under suspicious circumstances. A bullet, intended for the tenant, struck the janitor. This court allowed compensation applying the rule announced in *Ohio Building Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96, that where the duties of an employee are such as are likely to cause him to deal with persons who, in the nature of things, are liable to attack him, an injury sustained in the performance of such duties arises out of his employment. In *Central Illinois Public Service Co.* v. *Industrial Com.* 291 Ill. 256, this court said: "An injury, to come within the Compensation act, need not be an anticipated one, nor, in general, need it be one peculiar to the particular employment in which one is engaged at the time."

Defendants in error rely on the case of *Borgeson* v. *Industrial Com.* 368 Ill. 188, as controlling. In that case a salesman of musical instruments was accidentally shot by a bullet fired by a colored man, directed at a colored woman. The injury there was not incurred through any risk having its origin in the nature of the salesman's work. The possi-

bility of receiving injury through bullets was one shared by every passer-by, and not peculiar to his employment. Neither was the hazard increased by that employment. The factors in this case are obviously different. In *Heidemann v. American District Telegraph Co.* 230 N. Y. 305, 130 N. E. 320, a case involving the accidental shooting of a patrolman, the late Mr. Justice Cardozo said: "The sudden brawl, 'the chance medley,' are dangers of the street, confronting with stealthy menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveler, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek, where others were free to shun. The difference is no less real, because of a difference of degree." We conclude that the accident in this case arose out of and in the course of deceased's employment.

Counsel for the city suggests that the arrangement between it and the association was beyond the corporate power of the city in that it involved the payment of public money for a private purpose. The evidence does not support this contention. The proof was that deceased protected not only the premises of the association's members but all business premises, and he was authorized to perform the duties of a regular patrolman.

The contract of employment in the case before us was with both defendants in error. From previous opinions of this court there is ample basis for holding them jointly liable. *Page Engineering Co. v. Industrial Com.* 322 Ill. 60; *Chicago and Interurban Traction Co. v. Industrial Com.* 282 id. 230.

The judgment is reversed and cause is remanded to the circuit court, with directions to remand it to the Industrial Commission to enter an award consistent with the views herein expressed.

*Reversed and remanded, with directions.*