(No. 27740.—

I. J. HUDSON, JR., Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(TRI-CITY TRANSPORTATION COMPANY, INC., *et al.*, Plaintiffs in Error.)

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

W. C. ROPIEQUET, of East St. Louis, for plaintiffs in error.

JOE CRAIN, of Mound City, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Irma King, widow, and Marshall King, minor son, of Dewey King, deceased, filed, under date of September 7, 1939, their amended application under the Workmen's Compensation Act for compensation for his death. The Tri-City Transportation Company, a corporation, Bituminous Casualty Corporation, and I. J. Hudson, Jr., were made respondents. The application alleged that on May 26, 1939, Dewey King received an accidental injury arising out of and in the course of his employment by respondents, which injury resulted in his death on May 27, 1939. The arbitrator found that the deceased and the respondent, Tri-City Transportation Company and I. J. Hudson, Jr., were under the provisions of the Workmen's Compensation Act, and that the deceased had sustained accidental injuries arising out of and in the course of his employment, resulting in his death. He made an award of $12.10 per week for a period of 367 weeks and one week at $9.37, as provided in paragraph (a) of section 7 of said act as amended, for the reason that the injuries sustained caused the death of Dewey King, who left surviving him Irma King, his widow, and Marshall King, his son, who was under sixteen years of age at the time of said death and who said deceased was under legal obligation to support. On petition of Tri-

City Transportation Company and Bituminous Casualty Corporation, this decision was reviewed by the Industrial Commission. No additional evidence was heard except it was stipulated that the respondents, Tri-City Transportation Company and Bituminous Casualty Corporation might introduce in evidence "Exhibit A," which was an official State highway map of the State of Illinois for the year 1939. Same was then admitted in evidence. The commission set aside the award of the arbitrator, dismissed the Tri-City Transportation Company and the Bituminous Casualty Corporation as parties respondent to the cause, and entered an award that the respondent, I. J. Hudson, Jr., pay to Irma King, widow of the deceased, an aggregate death benefit of $3886, payable in weekly installments of $11, beginning May 27, 1939; said compensation to be used for the support and maintenance of herself and minor child. The record was reviewed by writ of *certiorari* sued out of the circuit court of Pulaski county by I. J. Hudson, Jr. The applicants did not appear or join in the appeal.

On hearing, the circuit court found the decision of the Industrial Commission was erroneous and set it aside and found from the record submitted that the Tri-City Transportation Company, Inc., Bituminous Casualty Corporation, and I. J. Hudson, Jr., the respondents in the original application, were jointly liable to pay the award found due by the commission. Writ of error was allowed on the petition of the Tri-City Transportation Company, Inc., and the Bituminous Casualty Corporation, respondents before the commission and in the circuit court.

It is not denied by either of the parties that this accidental injury arose out of and in the course of deceased's employment. The Bituminous Casualty Corporation, petitioner in this court, admits that it was the Workmen's Compensation insurer of the Tri-City Transportation Company at the time of the fatal accident of the deceased. The question in controversy is whether at the time of the acci-

dent, I. J. Hudson, Jr., was the sole employer of deceased, or whether he and the Tri-City Transportation Company were joint employers.

I. J. Hudson, Jr., was the manager and principal owner of all the stock of the Tri-City Transportation Company, which was engaged in operating busses between Cairo, Mound City, Mounds and Vienna. This company also chartered busses for interstate and intrastate trips. Hudson also individually operated a restaurant and had a number of vending machines located at points in nearby territory, which he serviced. The Bituminous Casualty Corporation carried the compensation insurance of the bus company and had been the insurer several years prior to the death of deceased, Dewey King, who was first employed by Hudson, about 1933, to wash busses, help around the bus station, and do mechanical jobs, including servicing and repairing vending machines. When Hudson employed King he was acting for himself individually and for the bus company. The bus company and Hudson each paid a part of his salary and both operated from the same office. An overall picture of the management reveals that the home office of the bus company and of Hudson was maintained in the same building at Mound City, which served as a ticket office for the bus company and, also, for a restaurant operated by Hudson. Here employees made and served sandwiches, sold gasoline and bus tickets.

From the record it is hard to determine just when an employee was working for Hudson as an individual, or working for the bus company, since the same employees who worked in the restaurant also sold tickets to the public for the bus company. In doing so they were following instructions issued by Hudson acting both for himself and as general manager of the bus company. One witness testified that she worked in the restaurant, fried hamburgers and sold them to the public, sold gasoline and bus tickets.

We are first confronted with the question as to whether or not the deceased was engaged in working for the bus company as well as Hudson, individually, on the date of his death. The evidence reveals that on the evening of May 25, 1939, deceased was instructed by Hudson to go to Vienna the following day and cancel a proposed bus trip to Evansville, Indiana; also to service some vending machines. It was while returning from this mission the next day that he was injured in an automobile accident which resulted in his death. It is evident that on the day in question his duties were to service vending machines at different points for Hudson, and at the same time solicit business for the bus company in the way of chartered trips; also, he was instructed to cancel out at Vienna, Illinois, a chartered bus trip which had been previously arranged. In this he was on a joint mission for the benefit of both employers.

Irma King testified she was standing in the door of the office of the bus company where she was employed when Hudson told her husband to go to Vienna; that this was the evening before he went out the next morning; that he told him to go by Vienna the next day and cancel a bus trip because it was out of the State.

Hudson testified that the deceased performed work for him, individually, worked some in the restaurant, repaired, serviced and checked vending machines, contacted people for the bus company who desired to charter busses; that he was first employed about ten years prior to his death to clean up around the location, wash busses, help the mechanic, and learn about the bus business and other business; that as he became more experienced he performed duties for Hudson as an individual and for the bus company; that he made all prices for the chartered trips. He further testified that it was the duty of deceased, Dewey King, while he was servicing machines, to work for the bus company; that most of the orders for chartered bus

trips came in by reason of King contacting people while on his route.

Vernon Atherton testified that he was acquainted with Dewey King in his lifetime and was employed by Hudson and the bus company to drive busses, to do mechanical work, and to work on vending machines; that he was acquainted with the character of the work that Dewey King was doing just prior to his death; that King drove busses extra days, worked in the shop, and worked on the cigarette and vending machines.

That his duties were as above stated was borne out further by respondent's "Exhibit 3," which was offered and admitted in evidence and which showed the earnings of King paid by the bus company and Hudson from June 1, 1938, to May 26, 1939. From this it is revealed that from June 6, 1938, to December 31, 1938, he was paid for his work in part by the bus company and the balance by Hudson. For several weeks during this period, to be exact, Dewey King was paid for his work at the rate of $7 each week by the bus company and $10 each week by Hudson.

Counsel for the bus company and the insurer urges that the record just referred to shows that while the deceased had been paid for some work by the bus company in 1938, the far greater part of his pay came from Hudson, individually, and that during the entire year of 1939, prior to the accident on May 26, he had been paid regularly by Hudson individually each week, but had not been paid one cent by the bus company. This is refuted by testimony which shows that sometimes the deceased was paid by check out of personal funds, sometimes by check on the bus company, and sometimes paid in cash; that at times he was paid a commission and salary; that when he drove on one of the chartered trips he was paid commission according to the earnings therefrom; that he was also paid a commission for soliciting business; that at the end of the year books were balanced and payments made; that he was

paid sometimes from individual funds and sometimes out of the bus company's account, being paid, as a general rule, by the week.

It is urged that much of the testimony offered was objected to as being only the conclusion of the witnesses who testified in the case for the applicants. It is sometimes difficult to determine the dividing line between inferential facts and evidentiary facts, and sometimes words or expressions are so used as to be synonymous with words which, if used, would be a statement of fact and not a conclusion. From an examination of the record, however, in this case, it is clear that the above facts were supported by competent evidence and that at the time the deceased met his death he was performing duties for Hudson as an individual in servicing his vending machines and also soliciting business for the bus company and taking care of business pertaining thereto.

It is contended by the bus company and the insurer that there was a deviation by the deceased in his employment by the company in going to Metropolis, but this could be of no avail under the evidence because his injury occurred while he was on his return trip to the home office and was in the scope of his employment for both employers.

It is argued by counsel for the bus company and the insurer that the question of liability of the insurance company was determined in a prior Appellate Court decision wherein that court refused to reform an insurance policy which covered the employees of the bus company. With this position we cannot agree, as the questions presented in that case were whether or not the policy should be reformed by reason of a mutual mistake to include I. J. Hudson, Jr., as a coinsured with the bus company, whose insurance was carried by said insurer. The cases cited in this respect are not applicable to the facts in this case. The question here is as to the joint liability for the injuries to the deceased.

It is further argued, without citation of authority, by counsel for the bus company and the insurer, that in the judgment of the circuit court the status of the insurer is not designated. Section 28 of the Workmen's Compensation Act (Ill. Rev. Stat. 1943, chap. 48, par. 165,) reads in part as follows: "The insurance carrier may be made a party to the proceedings to which the employer is a party and an award may be entered jointly against the employer and the insurance carrier." The insurance carrier was properly made a party to the proceeding and no objection as to improper designation was made either before the arbitrator, the Industrial Commission, or the circuit court. In view of our position that the bus company is liable, it would not seem to work to the prejudice of the insurer.

The serious question presented to the court is whether or not, under the facts as shown by the evidence in this case, a joint employment existed at the time of the accident, which would justify an award against both the bus company and Hudson. It is suggested, and quite apparent, there are no Illinois cases in which the facts are parallel to those in the instant case, and many of the cases cited and argued in the briefs of both parties lend but little aid in determining the correct solution of the questions presented. Some outside authorities set out in the briefs lead to the proposition that, under the facts here, there exists a joint employment that would sustain an award against both the bus company and Hudson, but these cases are not the exact parallel of the instant case. To analyze and set out all of them and differentiate as to their applicability would extend the opinion to unnecessary length.

It is evident from the facts in this case that while the deceased was employed to do work for Hudson he was also employed by the bus company to do work for it as a corporation. It is also apparent that work performed by the deceased for the bus company was different from the work performed for Hudson, but it is further shown that

while the employers were different entities, the work required by both was in operation at the same time. When the deceased left to carry out his duties for his employers on the day his death occurred, he was not only en route to perform, but was in fact performing, duties for both of them.

It is evident from the facts here that Hudson was not only engaged in business of his own, that of servicing machines, but also was the manager and principal stockholder in the bus company, and that he had employed the deceased to work for himself and the bus company at the same time; that he had sole authority to hire and direct the duties of the employees of both himself and the bus company; that he required the deceased to perform duties for the bus company at the same time he was engaged in performing duties for himself as an individual. King's duties required him to drive around over the territory servicing certain vending machines, and at the same time his instructions were, as the evidence shows, that he was to and did solicit business for the bus company in the way of securing chartered bus trips. As to just what particular time he would solicit business for the bus company and as to just what time he would be servicing a machine would seem, in point of time, to be almost indivisible but at any rate it can safely be said he was on a joint mission and was a joint employee to that extent. It would seem that from these facts, alone, he was in the employ of each of them during the day doing work for one or the other as the occasion might arise. In any and all circumstances he certainly would be considered in the employment of both employers while returning from points where he had been instructed to go by both parties.

A case with similar facts was decided by the Supreme Court of the State of Arizona in the case of *Butler* v. *Industrial Com.* 50 Ariz. 516, 73 Pac. 2d 703. One Butler there worked for the Nace Municipal Stadium, a corpora-

tion, and for the Riverside Amusement Company. Nace was the general manager of both corporations and had full power in directing the work of the employees for both concerns. So acting, he employed Butler to work for both and while Butler was traveling between the two places of employment he was struck by a car and injured, and the question there presented was as to which employer was liable to pay compensation. The court held them joint employers, thus jointly liable.

In the case of *Stevens* v. *Hull Grummond & Co.* 274 N. Y. 227, 8 N. E. 2d 498, one Stevens was employed by Hull Grummond & Co., Inc., and Whipple, Inc. For the former he acted as a night watchman receiving wages of $18 per week and during the time of his employment he did certain cleaning up for Whipple, Inc., for which services he received $2.50 per week. Stevens was injured while doing such cleaning, and Hull Grummond & Co., Inc., contended that while the injury was sustained in the course of the employment of the employee by Hull Grummond & Co., it did not arise out of such employment. In that case it was found that at the time of the accident the employee was engaged in the services of both employers. The court further held the case could not be distinguished from *Jacobi* v. *Supreme Junior Coat Co.* 268 N. Y. 654, 198 N. E. 541. There an employee regularly engaged in selling cloth coats was making a trip on which he was selling goods for that concern as well as another and was injured in an automobile accident; that the employee was available for work for both employers and had not temporarily in part or otherwise left the employment of either. In the instant case the deceased was available for work for both employers on the particular trip he made, on instructions and under his contract of employment for both employers, and while returning met his death. It is true that in the above cases the awards against the respective corporations were divided on the basis of payments per

week by each of them, but it is definitely shown, by the evidence there, the exact amounts as paid by each employer for the services rendered.

In the case of *Page Engineering Co.* v. *Industrial Com.* 322 Ill. 60, a night watchman was employed by two companies whose properties were adjoining. He was required to watch both properties every night and was paid the same sum by each company. In that case it was held that this was a joint hiring and any injury received in such employment, whether on the property of one or the other of the employers, arose out of the joint employment.

In the case of *Krawiec* v. *Industrial Com.* 372 Ill. 560, Paul Krawiec was employed by the Chicago Heights Merchants and Citizens Protective Association to protect the premises of the association members and they collected the needed money to pay such merchant police. The association recommended Krawiec and he was appointed. His duties consisted chiefly in protecting the business premises called the downtown district, but in addition he was authorized to perform all the functions of a regular patrolman. He was paid by the city of Chicago Heights and by the additional funds raised by the citizens and merchants. On the morning of February 6, 1938, at 1:40 A. M., Krawiec was on duty with Officer Leinen engaged in making a night deposit of money for a bowling alley at the Citizens National Bank. This was a customary service for establishments required to remain open late hours. Krawiec drove the car to the curb in front of the bank, got out of the car and walked toward the bank. As he approached the door gunshots were heard and one bullet struck him. He was taken to the hospital where he later died. The court there held, under the proof, that deceased protected not only the premises of the association members but all business premises, and he was authorized to perform the duties of a regular patrolman; that the contract of employment in the case was with both defendants in

error, holding them jointly liable. It can readily be seen in that case the deceased was employed by one employer to protect the premises of the association members as well as all business premises and was also employed by the city to further perform the duties of a regular patrolman, and while on duty with Officer Leinen was making a night deposit of money for a bowling alley at the Citizens National Bank when he met his death. It is apparent the services to be rendered to the different employers were not similar in their requirements. One employer required him to guard its property and the other to perform all the functions of a regular patrolman.

In the instant case King was employed by Hudson acting both for himself and as manager and owner of the bus company. His duties were assigned to him by Hudson acting in that capacity. Each employer had actual knowledge of what King was to do for the other. King was engaged in a mission for both of them and was returning therefrom when killed, and under such conditions both are liable for his accidental death which arose out of and in the course of his employment. The contract of employment in the case before us was with both Hudson and the bus company. From previous opinions of the court there is ample basis for holding them jointly liable. *Krawiec* v. *Industrial Com.* 372 Ill. 560; *Page Engineering Co.* v. *Industrial Com.* 322 Ill. 60; *Chicago and Interurban Traction Co.* v. *Industrial Board,* 282 Ill. 230.

The evidence offered by Hudson that the deceased spent about one half of his time working for each employer in the year previous to his death and that it balanced equally was contradicted by certain records offered in evidence which showed amounts the bus company paid and Hudson paid during the year previous to the accident. The latter, of course, could only be considered with other evidence in the case as to the money paid by the distinct entities to the deceased during such year. Hudson, as to other payments,

testified that the deceased was sometimes paid personally out of personal funds, sometimes paid for some of the work by checks on the bus company, sometimes by check from either one, and sometimes paid in cash. The book-keeper testified that in addition to the above record of checks as shown by the books, there were cancelled checks to show payments of wages or salary to Dewey King. The bookkeeper also testified to a number of transactions through petty cash which Hudson had testified was the money which he paid Dewey King, the deceased, at times in cash. There was further testimony that in the year previous to his death the time he spent working for each employer was about equally balanced.

It is urged that since the decision of the Industrial Commission is neither contrary to law, nor to the manifest weight of the evidence, the final order of the circuit court should be reversed and set aside and the decision on review of the Industrial Commission should be affirmed. Under the Workmen's Compensation Act the circuit court has the power to review all questions of law and fact presented by the record, and if it determines that the Industrial Commission's findings of fact are contrary to the manifest weight of the evidence, it is the court's duty to set aside the decision of the commission. *Porter* v. *Industrial Com.* 352 Ill. 392; *Peabody Coal Co.* v. *Industrial Com.* 349 Ill. 160; *Atlas Linen Supply Co.* v. *Industrial Com.* 348 Ill. 69; *Long* v. *Industrial Com.* 347 Ill. 250; *Berry* v. *Industrial Com.* 335 Ill. 374.

From an examination of the record, we are convinced the decision of the commission was contrary to the manifest weight of the evidence. The judgment of the circuit court setting aside the decision and entering an award in favor of the applicants is correct. The judgment is affirmed.

*Judgment affirmed.*